**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| HILLARY WHITE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SPORTS AND CUSTOM TEES, INC. d/b/a Tee Shirt Palace, a Michigan Corporation and DOES 1-10,<br><br>Defendants. | Case No. 22-cv-10218<br><br>Honorable Judith E. Levy<br><br>**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

**<u>PLAINTIFF'S MOTION FOR ATTORNEYS' FEES</u>**

COMES NOW, Plaintiff Hillary White, by and through her undersigned counsel, and hereby moves the Court under Fed.R.Civ.P. 54 and Local Rule 54.1.2 for an award of her attorneys' fees, awardable at the Court's discretion pursuant to the authority of 17 U.S.C. § 505. As the prevailing party in the instant action, Plaintiff White seeks an award of her reasonable attorneys' fees and expenses in the total amount of $34,464.85. In support of her motion, Plaintiff relies upon the memorandum and attorney declarations submitted herewith.

WHEREFORE, Plaintiff respectfully requests that the Court grant her motion for attorneys' fees and costs and enter the proposed order submitted contemporaneously herewith.

Dated: August 4, 2022

Respectfully submitted,

**DANCHUK LAW, LLC**

*s/ Emily A. Danchuk*
Emily A. Danchuk, Esq.
2 Victoria Lane
Falmouth, ME 04105
(207) 747-4135
emily@emilyesquire.com

ARONOWITZ LAW FIRM PLLC
Edmund Aronowitz (P81474)
220 S. Main St., Ste. 305
Royal Oak, Michigan 48067
(248) 716-5421
edmund@aronowitzlawfirm.com

*Attorneys for Plaintiff Hillary White*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| HILLARY WHITE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SPORTS AND CUSTOM TEES, INC. d/b/a Tee Shirt Palace, a Michigan Corporation and DOES 1-10,<br><br>Defendants. | Case No. 22-cv-10218<br><br>Honorable Judith E. Levy<br><br>**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**

## I. INTRODUCTION

Plaintiff was forced to institute this lawsuit to address Defendant's ongoing and pervasive copyright infringement. Now that Plaintiff has obtained judgment against Defendant Tee Shirt Palace on her copyright claims, she accordingly moves this Court pursuant to Fed. R. Civ. P. 54(d)(2) and Local Rule 54.1.2 for her attorneys' fees, awardable under the U.S. Copyright Act.

This Court has discretionary authority to award Plaintiff, as the prevailing party in the action, attorneys' fees pursuant to 17 U.S.C. § 505. Plaintiff's copyright claims were instituted and advanced with reasonableness, in good faith, and without frivolity. The facts of this case warrant an award of Plaintiff's reasonable attorneys' fees, an award that will patently further the purposes of the Copyright Act.

Plaintiff has not obtained concurrence for this motion; Defendant has expressed its intention to oppose Plaintiff's petition for attorneys' fees.

## II. PROCEDURAL HISTORY

In November 2021, Plaintiff discovered products bearing unauthorized copies of her artwork being offered for sale on the website located at www.teeshirtpalace.com (the "TSP Website") (Compl. ¶ 17). The TSP Website is owned and operated by Defendant Sports and Custom Tees, Inc. d/b/a/ Tee Shirt Palace ("Defendant" or "TSP"), an online company offering manufacturing and printing of custom designs on personal products and accessories. (Compl. ¶ 12).

On February 3, 2022, and after several attempts to resolve the matter without litigating, Plaintiff filed her complaint against Defendant and Doe Defendants for direct copyright infringement and vicarious and/or contributory copyright infringement pursuant to the U.S. Copyright Act, 17 U.S.C. § 101 *et seq*. (ECF 1). Defendant TSP executed a waiver of service for

the complaint on March 18, 2022 (ECF 7), and on May 2, 2022, filed its answer to the complaint (ECF 10).

On June 15, 2022, Defendant TSP served an offer of judgment under Fed. R. Civ. P. 68 and on June 21, 2022, Plaintiff White filed her notice of acceptance of Defendant's Rule 68 Offer (ECF 18). This Court entered judgment against Defendant TSP for all of Plaintiff's claims on July 7, 2022 (ECF 20).

## III. FACTUAL BACKGROUND

*i. Pre-Litigation Infringement*

Plaintiff Hillary White ("Plaintiff" or "White") is a Maine artist whose unique artwork incorporates various themes, including 1980's redux-inspired t-shirt designs. (Compl. p.1). White's livelihood is completely dependent on her ability to license her artwork and sell merchandise bearing her designs. In November 2021, Plaintiff Hillary White discovered that product (apparel, posters, mugs, etc.) bearing unauthorized copies of several of her copyrighted designs ("Infringing Product") was being offered for sale on the TSP Website (Compl. ¶ 17).

At the outset of this matter, Plaintiff intended to submit a Digital Millennium Copyright Act ("DMCA") takedown notice with Defendant requesting removal of the infringing product URLs. Indeed, upon the URL removal, White would have considered the matter closed. This intended course of action was in line with White's normal *modus operandi* when she finds infringing product online; removal and resolution. However, Defendant's disregard of Plaintiff's several notices of copyright demanded a shift in Plaintiff's strategy, requiring more formal action to address Defendant's continued infringement.

On November 27, 2021, Plaintiff submitted a DMCA takedown notice to Fastly.com, TSP's content delivery network, requesting that they disable access to two URLs on the TSP

Website for product bearing copies of Plaintiff's designs (Compl. ¶ 21). Fastly.com promptly acknowledged receipt of the DMCA notice and forwarded the notice to Defendant TSP on November 29, 2021 (Compl. ¶ 21). One week later, Plaintiff noticed that the infringing product URLs were still active and product could still be purchased on the TSP Website. And, while reviewing the TSP Website Plaintiff discovered an additional 25 URLs for infringing product on the TSP Website (Compl. ¶ 22). White reported these additional URLs to Fastly.com. *Id.* Plaintiff asked her attorney to prepare a cease-and-desist letter to Defendant TSP, advising it again of the infringement and demanding deactivation of URL links to the infringing product (Compl. ¶ 24). A cease-and-desist letter was sent on December 14, 2021 requesting removal of the subject URLs. *Id.*

Despite this second notice of Plaintiff's copyrights, Defendant did not deactivate links to all of the infringing product URLs (Compl. ¶ 25). Accordingly, and with no other recourse, Plaintiff initiated this lawsuit for copyright infringement against Defendant. Plaintiff filed her complaint and Defendant finally removed all of the subject infringing product links. *Id.*

*ii. Post-Complaint Infringement*

During litigation, White discovered even more infringing product on the TSP Website. Specifically, White discovered products infringing her "OMG Snek!" and "Street Cats" designs and requested her attorney to contact TSP's counsel to remove the infringing product (Lapin Decl. ¶ 8). Accordingly, on May 4, 2022, Plaintiff's counsel emailed Yafeez Fatabhoy, one of TSP's attorneys, advising him of the latest URLs displaying infringing product and requesting their removal/deactivation. (Lapin Decl. ¶ 9). TSP's counsel did not respond to this email and the infringing product remained on display and for sale. *Id.* On May 12, 2022, Plaintiff's counsel sent another email to Mr. Fatabhoy, following up on his May 4th email (Lapin Decl. ¶ 10). Mr.

Lapin received no response to that email either. *Id.* The links to the infringing product were not deactivated until June 10, 2022, after Plaintiff's counsel sent a formal demand letter to Mr. Fatabhoy on June 6, 2022 regarding the ongoing infringement (Danchuk Decl. ¶¶ 18, 20). One of Plaintiff's demands in this formal letter was for Defendant to provide sales numbers for the infringing "OMG Snek!" and "Street Cats" products. (Danchuk Decl. ¶ 19). Defendant's counsel reported that TSP had made "absolutely no sales" of the subject infringing product (Danchuk Decl. ¶ 22).

However, Plaintiff had asked a friend to visit the TSP Website and purchase several products bearing copies of Plaintiff's "OMG Snek!" and "Street Cats" designs. Plaintiff arranged for these purchases to ensure that Defendant was accurately reporting sales (Danchuk Decl. ¶ 15). Plaintiff's friend duly purchased several items bearing the copies of White's designs, including a poster and two t-shirts. Accordingly, Defendant's report that there were no sales of product was inaccurate, since Plaintiff purchased the product from the TSP Website (Danchuk Decl. ¶ 15). Once Defendant realized that it had been caught red-handed, it tried to walk back its position, from "absolutely no sales" to "[a] cursory check of [Defendant's] systems showed no sales, but I have asked him to be thorough given your request for confirmation of this fact…" Defendant's counsel then had the audacity to warn Plaintiff's counsel that any sales Plaintiff is aware of must be disclosed in Plaintiff's initial disclosures (Danchuk Decl. ¶¶ 24, 25).

Defendant TSP's conduct has consisted of dishonest sales reporting, continued infringement, disregarded requests for information, unfounded accusations of copyright trolling, and aggressive litigation tactics. Defendant falsely represented that there were no product sales for the "OMG Snek!" and "Street Cats" designs. (Danchuk Decl. ¶ 22). Defendant delayed in addressing infringement for a month after receiving Plaintiff's notice of copyright. Defendant's counsel

harassed Plaintiff's counsel for her immediate deposition at the outset of this litigation without justification. Defendant has also threatened to misuse the judicial process to "send a message...to deter other copyright trolls from disrupting his business." (Danchuk Decl. ¶ 21). When Plaintiff made a very reasonable counteroffer to Defendant, Mr. Fatabhoy stated, "Frankly, a *de minimis* Rule 68 Judgment appearing on the docket is the only way my client will settle this case, so that any future copyright shakedowns by others will be deterred by his obvious willingness to fight and refusal to settle for an amount that makes any lawsuit worthwhile (Danchuk Decl. ¶ 21). Then when Plaintiff pressed Defendant's counsel on the issue of sales, Defendant's essentially dismissed Plaintiff's request, stating, "given that the listings have been taken down, we maintain that there is simply no harm to your client." At no time did Mr. Fatabhoy address the falsity of sales reporting or the fact that Defendant ignored Plaintiff's notice for over a month.

Defendant's general obstinance, lack of cooperation and bad faith conduct have all substantially hindered Plaintiff's attempts to uncover the truth of the infringement and efficiently resolve the matter.

Despite Defendant's efforts to thwart Plaintiff's case, she has now prevailed on her copyright infringement claims, having obtained judgment in her favor by accepting Defendant's Rule 68 Offer. Plaintiff now seeks her attorneys' fees and in doing so submits that these circumstances are ideal for the award of attorneys' fees pursuant to 17 U.S.C. § 505.

*Defendant's FRCP Rule 68 Offer of Judgment*

On May 25, 2022, Defendant's counsel emailed Plaintiff's counsel a letter purporting to contain a Rule 68 Offer of Judgment and a threat to shift Defendant's attorney's fees to Plaintiff should Plaintiff recover less than $5,000 in damages. (Danchuk Decl. ¶ 16). Defendant's Rule 68 Offer and threat suffered from several defects. First, the "Rule 68 Offer" was not properly served

as required by Rule 68. Second, it was undated. Third, it was unreasonably and intentionally ambiguous in that it noted Defendant's opposition to an award of attorney's fees without more. (Danchuk Decl. ¶ 26). Because Defendant drafted the alleged "Offer," Plaintiff had no way to reasonably determine whether a judgment that also included an attorney fee award would be "not more favorable than the unaccepted" Rule 68 offer such that cost shifting could come into play.[1]

Accordingly, on June 6, 2022, Plaintiff sent Defendant a letter rejecting the procedurally deficient "Rule 68 Offer" made in Defendant's May 25, 2022 settlement letter, proposing a counter offer to resolve all damages and fee disputes together. The letter explained why Plaintiff would be entitled to an attorneys' fee award under the Copyright Act and outlined the circumstances in this case. On June 10, 2022, Defendant rejected Plaintiff's counter and instead proposed that "although the Rule 68 Offer has expired (so we are under no obligation to honor it), my client will leave it open for an additional week (expiring June 15, 2022)." (Danchuk Decl. ¶ 21).

On June 14, 2022, Plaintiff responded to Defendant and explained the procedural deficiencies with Defendant's May 25, 2022 "Rule 68 Offer" attempt and June 14, 2022 proposed extension, and in response, Defendant fixed its procedural errors. (Danchuk Decl. ¶ 26). On June 22, 2022, Plaintiff accepted the offer, all the while attempting to resolve this attorney's fee dispute without the need for motion practice.

## IV. ARGUMENT

Under Federal Rule of Civil Procedure 54,

> "(A) A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages. (B) *Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion must:

[1] In other words, if Plaintiff recovered $4,999 in damages and several thousand more in attorneys' fees after rejecting Defendant's attempted "Rule 68 Offer," Defendant would still claim that Plaintiff did not do better than the $5,000 in damages offered due to the way Defendant attempted to structure its demand.

(i) be filed no later than 14 days after the entry of judgment;
(ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
(iii) state the amount sought or provide a fair estimate of it; and
(iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made."

The corresponding Local Rule for the U.S. District Court for the Eastern District of Michigan 54.1.2 dictates,

> "(a) A motion for attorneys' fees and related non-taxable expenses pursuant to Fed.R.Civ.P. 54(d)(2) must be filed no later than 28 days after entry of judgment. (b) A motion for an award of attorneys' fees shall be supported by a memorandum brief as to the authority of the Court to make such an award, and as to why the movant should be considered the 'prevailing party,' if such is required for the award. The motion shall also be supported by an declaration of counsel setting out in detail the number of hours spent on each aspect of the case, the rate customarily charged by counsel for such work, the prevailing rate charged in the community for similar services, and any other factors which the Court should consider in making the award."

Plaintiff's timely motion and accompanying documents support findings that: (a) this Court has the authority to award Plaintiff her attorneys' fees; (b) Plaintiff is the prevailing party in this action, and (c) Plaintiff's requested attorneys' fees are reasonable.a

**<u>A. This Court has Authority to Grant Plaintiff's Attorneys' Fees</u>**

In the United States, parties to litigation are generally obligated to pay their own attorneys' fees to prosecute or defend a case. However, there are certain exceptions to this "American Rule," including claims under several federal statutes. One of those federal statutes is the Copyright Act of 1976.

This Court has authority under the U.S. Copyright Act to award Plaintiff her reasonable attorneys' fees as the prevailing party in this lawsuit and the holder of timely-obtained copyright registrations. *See* 17 U.S.C. § § 412 and 505. 17 U.S.C. § 505 provides that "the court in its discretion may…award a reasonable attorney's fee to the prevailing party as part of the costs." In

order to enjoy the benefits of § 505, however, the Copyright Act requires that the subject work was "timely registered," as contemplated by 17 U.S.C. § 412. Section 412 requires that a copyright registration for the subject work is timely obtained, either before the infringement begins or within three months of publication of the subject work. Section 412 states,

> "In any action under this title…no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for…any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."

Accordingly, for an award of plaintiff's attorneys' fees as contemplated by the Copyright Act, Section 412 requires timely registration of the work at issue. A timely filed registration has an effective date of copyright registration that either: (a) predates the infringement, or (b) is within three months of the first publication of the work. See 17 U.S.C. § 412. Once this registration requirement is satisfied, courts have wide discretion whether to award attorneys' fees. See, e.g., *Kirtsaeng v. John Wiley & Sons, Inc*., 136 S.Ct. 1979, 1985 (2016). 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (Courts have "wide latitude to award attorney's fees based on the totality of circumstances in a case.").

Courts have long grappled with the broad discretionary authority granted to them pursuant to 17 U.S.C. § 505, but nonetheless have widely adopted certain tenets, including that an award of attorneys' fees is "the rule rather than the exception and they should be awarded routinely," (*Bridgeport Music, Inc. v. WB Music Corp. (WB Music II)*, 520 F.3d 588, 592 (6th Cir. 2008)) but also that such fees should not be awarded as a matter of course. See *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

Federal courts are guided by the Supreme Court's decision in *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 (1994) which identifies the standards, or factors, to inform the exercise of a court's

authority in awarding attorneys' fees. In *Fogerty*, the Supreme Court warned that attorneys' fees should not be granted "as a matter of course," but rather that such awards should be considered on a case-by-case basis. The *Fogerty* factors, are "frivolousness, motivation, objective unreasonableness and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016). Courts in the Sixth Circuit adhere to the *Fogerty* analysis. See e.g., *Thoroughbred Software International, Inc. v. Dice Corp.*, 488 F.3d 352 (6th Cir. 2007). See also, *Coles v. Wonder*, 283 F.3d 798, 804 (6th Cir. 2002); *Westbound Records v. WB Music*, 520 F.3d 588 (6th Cir. 2008)

A review of the facts in this case, seen through the lens of the *Fogerty* factors, leads comfortably to the conclusion that an attorneys' fees award is appropriate and will doubtlessly further the purposes of the Copyright Act, which are to "'enrich the general public through access to creative works,' by striking a balance between encouraging and rewarding authors' creations and enabling others to build on that work." *Kirtsaeng*, 136 S.Ct. at 1986 (quoting *Fogerty*, 510 U.S. at 527).

*Frivolousness and Objective Unreasonableness*

Courts often consider frivolousness and objective unreasonableness of the prevailing party's position to overlap and thus be deliberated together. See e.g., *Bliss Collection, LLC v. Latham Companies, LLC*, No. 5:20-CV-217-CHB, 2022 WL 1154600, at *5 (E.D. Ky. Apr. 19, 2022) ("The 'reasonableness' and 'frivolousness' factors overlap conceptually, so the Court will consider them together."), *appeal docketed*, No. 22-5361 (6th Cir. April 28, 2022). See also, *Joe Hand Promotions, Inc. v. Griffith*, 3:20-CV-382-TRM-JEM, at *6-7 (E.D. Tenn. June 21, 2022).

Plaintiff's claims were not frivolous, unreasonable or brought in bad faith, but rather were based in fact and the law and fully supported by evidence. Plaintiff is the owner of enforceable

copyrights to her unique artworks, which have been memorialized by U.S. copyright registrations (Compl. ¶ 9, 10). Defendant's TSP Website displayed artwork and offered products bearing copies of this artwork, and these infringing copies are either strikingly similar or identical to Plaintiff's original artworks (Compl. ¶ 30-33, 39-41, 46-49). Plaintiff's infringement claims were brought legitimately under the Copyright Act, were developed and maintained in good faith, and were not initiated lightly. The validity Plaintiff's claims is further supported by Defendant's answer, which recites only boilerplate, largely inapt defenses (e.g., Defendant's safe harbor defense under 17 U.S.C. § 512 is invalid, as Defendant is well aware, because Defendant did not have a registered agent with the U.S. Copyright Office) (See Def. Answer, p. 12). Plaintiff's claims were sufficiently valid for Defendant to make an offer of judgment against it for all claims rather than present a case defending its conduct. Because Plaintiff's claims were a legitimate exercise in copyright enforcement and not objectively unreasonable or frivolous, these two factors favor Plaintiff.

*Motivation*

Plaintiff's principal motivation in suing was to stop Defendant's display and sale of infringing product and to successfully enforce her copyrights. Indeed, Plaintiff's initial intention was simply to effect removal of the URLs for infringing product so that she could return to creating more artwork designs. Defendant's failure to respond to Plaintiff's notices of copyright foiled those plans and Plaintiff felt she had no other option but to bring suit.

Plaintiff's unique and humorous designs lend themselves well to affixation on personal merchandise, such as shirts, mugs and posters. Unfortunately, and due to their popularity, Plaintiff's designs are often misappropriated by individuals and businesses for commercial purposes. In cases where infringing content is promptly removed, Plaintiff usually considers that

to be the conclusion of the matter. However – and as is her right – in cases where Plaintiff's copyright notices and communications are dismissed and the infringing content remains for sale, Plaintiff will sue the infringing party to enforce her intellectual property rights where appropriate.

Here, Plaintiff provided notice of her copyrights to Fastly.com via a DMCA notice. Fastly.com, in turn, provided this notice to Defendant Tee Shirt Palace (Compl. ¶ 21). Despite this notice of copyright, Defendant took no action to remove the infringing content. Plaintiff then sent Defendant a cease-and-desist letter, again providing notice of copyright and again demanding removal of the infringing content. (Compl. ¶ 12). In this letter, Plaintiff requested that Defendant provide information and documentation relevant to the infringements of Plaintiff's works, including, *inter alia*, sales and revenue information, the source of the infringing artwork, identification of individual sellers, and publication dates for URLs. Still, infringing product remained for sale on the TSP Website, and Defendant did not otherwise respond to Plaintiff's communication. Without any other recourse available, Plaintiff filed the instant lawsuit. Defendant finally removed the remaining infringing content on the TSP Website.

Plaintiff's claims were motivated by a desire to defend her valuable intellectual property rights and were not driven by any dilatory motive. While Defendant would have this Court believe that Defendant has fallen victim to copyright trolling, this is simply not the case. Plaintiff is the actual creator of the works at issue in this case, she is not the purchaser of some other artist's copyrights. Plaintiff has submitted hundreds of DMCA notices with platforms selling product infringing her own work and the vast majority of these notices result in prompt resolution upon URL deactivation. Plaintiff has created hundreds of artwork designs and the nature of her artwork invites copycats. Occasionally Plaintiff has had to sue to enforce her copyrights, a measure she does not take lightly. Since she started her business in 2009, Plaintiff has brought a total of ten

civil lawsuits for copyright infringement, including the present litigation (Danchuk Decl. ¶ 9). These facts do not lend well to the proposition that Plaintiff is a copyright troll. Accordingly, as Plaintiff's actions were motivated by her desire to protect the property that is the foundation of her business, a consideration of motivation also favors Plaintiff.

*The need to advance compensation and deterrence*

Defendant took no action in response to Plaintiff's first notice that it was selling products infringing Plaintiff's designs. When Plaintiff sent a formal cease-and-desist letter, Defendant removed most but not all of the infringing product and otherwise did not respond to Plaintiff's claims or challenge Plaintiff's allegations. Only when Plaintiff initiated the instant lawsuit did Defendant effect takedown of all infringing product.

Plaintiff was faced with this scenario again when she, through her counsel, notified Defendant of additional infringing products on the TSP website during this litigation. Despite its receipt of two written notices of copyright for the "OMG Snek!" and "Street Cats" artwork, Defendant failed to deactivate the subject URLs. Only when Plaintiff notified Defendant of the ongoing infringement via another formal cease-and-desist letter did it deactivate the links. And, to add insult to injury, Defendant subsequently lied to Plaintiff about sales of these products[2]. To date, Plaintiff does not have accurate information regarding Defendant's sales of this infringing product; Plaintiff doesn't even know how much product was sold. The last time Plaintiff followed up with Defendant to request accurate sales information, Defendant's counsel explained that his

[2] Initially, Defendant's counsel represented that "[Defendant] informs me that there were absolutely no sales made in connection with [this artwork]." When Plaintiff pressed the issue, subtly hinting that it was, indeed, aware of sales, Mr. Fatabhoy walked back his previous representation, stating "[a] cursory check of his systems showed no sales, but I have asked him to be thorough given your request for confirmation of this fact…" (Danchuk Decl. ¶¶ 22-24). Plaintiff is aware of approximately $50.00 in sales of this infringing product.

client "spends his days running a small business and cannot simply jump when you say so," (Danchuk Decl. ¶ 24).

In *Sailor Music v. IML Corp.*, 867 F. Supp. 565, 570 (E.D. Mich. 1994), this Court awarded a copyright plaintiff her attorneys' fees after prevailing against an infringer. The Court explained,

> "The Defendants, despite having had prior experience in dealing with ASCAP, *simply chose to disregard the Plaintiff's rights to the copyrighted material*. Additionally, they refused ASCAP's multiple offers to forego litigation in exchange of their payment of ASCAP's dues. *Thus, they have forced the Plaintiffs to engage lawyers, incur legal fees, and resort to the courts to enforce their rights.* Significantly, the Defendants have failed to present any facts which mitigate their serious infraction. *These circumstances demonstrate that they have engaged, and will continue to engage, in a pattern of deliberate indifference toward the Plaintiff's rights. Hence, it is evident to this Court that costs and attorney's fees should be granted. Id at* 570-71. (emphasis added).

See also, *Bridgeport Music v. London Music*, 226 F. App'x 491, 8 (6th Cir. 2007) ("there is certainly no legal requirement that the defendants work with a potential plaintiff to clarify copyright issues. Refusal to do so, however, does tend to undercut their claims regarding the plaintiffs' motivations and unreasonableness.")

Plaintiff submits that the *Sailor Music* Court was faced with similar situation to that here; Defendant TSP, the owner of a website platform trading in product bearing third-party owned intellectual property chose to disregard Plaintiff's copyrights and brushed off Plaintiff's attempts to resolve the infringement pre-litigation. When Plaintiff was required to sue to enforce her rights, Defendant balked, accusing White of being a copyright troll without providing any reasoning for this assertion or evidence of copyright trolling. Defendant's recalcitrance is especially egregious in light of its blatant dishonesty in reporting sales once the product was finally removed. Plaintiff notes that this particular conduct occurred after this Court got involved.

Defendant is allegedly on a mission to right the "wrongs" of copyright enforcement; Defendant's counsel advised Plaintiff that TSP "is willing to pay 10x (sic) [Plaintiff's proposed

settlement offer] amount in attorney fees to send a message to the copyright community to deter other copyright trolls from disrupting his business." Defendant is apparently under the impression that its copyright infringement should be allowed to continue unfettered, that artists enforcing their rights against this infringement are copyright trolls, and that it can squander this Court's time and resources in furtherance of its mission to directly contradict the U.S. Copyright Act simply for its own convenience and profit.

We cannot imagine circumstances more ripe for an award of attorneys' fees. At no time has Defendant presented any defense or excuse for its actions of permitting unrestricted copyright infringement run rampant on its commercial website. Defendant has still shown no remorse for its actions. Defendant did not show any interest in discussing the case with Plaintiff to come to quick resolution of the matter. Indeed, when faced with the consequences of its actions, Defendant railed at the indignity of having to comply with the law. Although Plaintiff did not have an opportunity to prove the willfulness of Defendant's infringement at trial, the facts certainly support a finding that Defendant blatantly disregarded Plaintiff's copyrights several times over. This is exactly the type of conduct the Copyright Act was enacted to preclude and deter.

When considering the need to advance compensation, it is worth noting again that Plaintiff's livelihood is entirely dependent on the sale and license of her artwork and products bearing her artwork. When her works are misappropriated, Ms. White must take time away from her artwork to prepare and submit DMCA notices to online platforms requesting removal of the infringing product. If she doesn't invest this time in removal of infringing product, her artwork will lose value as both a consumer product and as a licensable property. Ms. White spends hours and hours several days a week submitting DMCA take down notices to parties such as Amazon, Etsy, Teespring and others to enforce her rights. When White is faced with a tenacious infringer,

she contacts her intellectual property counsel to discuss the legitimacy of a lawsuit, whether the filing of a complaint is warranted, and what the expectations for a successful outcome look like.

Plaintiff loses time sending DMCA notices and dealing with infringement, but she also loses money when her works are misappropriated. Every time an infringer sells a t-shirt, a poster, a tote bag bearing a copy of Plaintiff's design, Plaintiff has lost a sale. Accordingly, when infringers like Defendant ignore copyright notices, products remain up for sale, the artwork loses value, the artist loses sales, and the damage to the artist and value of the artwork continues unabated.

Plaintiff is still in the dark on revenues Defendant made from the infringing product; Defendant initially provided only a number of $97.86 in the letter accompanying its Rule 68 "Offer", with no corroborating documentation or source information (Danchuk Decl. ¶16). Defendant stated that it made no sales of the "OMG Snek!" and "Street Cats" artwork when it did, in fact, sell the product. Plaintiff has no reason to trust Defendant's representation of revenues, so she really has no idea how much infringing product has actually been sold.

Finally, Plaintiff's counsel has taken this matter on a contingency fee arrangement with White, whereby her counsel will receive as her fee thirty-seven percent (37%) of all amounts recovered (Danchuk Decl. ¶ 8). While Plaintiff's counsel has expended tens of hours preparing the complaint, communicating with Defendant's counsel, preparing discovery materials and preparing this motion for attorneys' fees, and without an award of attorneys' fees, Plaintiff's counsel will not be fairly compensated for time expended on the case. Indeed, with the judgment recovered from Defendant, Plaintiff's counsel will have earned approximately $23.00 per hour working on Plaintiff's case. The purpose of incentivizing attorneys to take on the risk of contingency cases for artists who otherwise couldn't afford an attorney is a worthy one. Artists

who couldn't otherwise afford to enforce their valuable rights are able to do so. Accordingly, this furthers the purposes of the Copyright Act, namely to permit a copyright owner the opportunity to enforce his rights. Accordingly, the factor of "the need for compensation and deterrence" strongly favors the granting of attorneys' fees to Plaintiff.

**<u>B. Plaintiff is the Prevailing Party in this Lawsuit</u>**

Defendant made a formal Federal Rule of Civil Procedure 68 offer of judgment to Plaintiff, and Plaintiff accepted the same on June 21, 2022 (ECF 18). The accepted Rule 68 offer states,

> "WHEREFORE, Defendant hereby offers to Plaintiff to allow entry of judgment against it under the following terms: 1. Liability. **<u>Entry of a final Judgment and a finding of copyright infringement against Defendant, in favor of Plaintiff, for all copyright claims</u>** that have been, or could have been, asserted against Defendant in this action…" (emphasis added).

Black's Law Dictionary defines the term 'prevailing party' as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded." Black's Law Dictionary 1145 (7th ed. 1999). Because Plaintiff obtained judgment against Defendant for each of her copyright infringement claims, Plaintiff is the "prevailing party" in this action.

**<u>C. Plaintiff's Attorneys' Fees are Reasonable</u>**

As Plaintiff has established this Court's authority to grant attorneys' fees and Plaintiff's entitlement to such fees, Plaintiff now must demonstrate that her attorneys' fees are reasonable as interpreted by the U.S. Supreme Court and the Sixth Circuit. Where a fee-shifting statute authorizes "reasonable attorneys' fees," it is well settled that the reasonableness of such attorneys' fees is determined by using the "lodestar" calculation, which is determined by a reasonable number of hours multiplied by a reasonable rate. See *Blum v. Stenson*, 465 U.S. 886, 896 (1984); See also, *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Building Serv. L 47 Cleaning Con. v. Grandview*, 46

F.3d 1392 (6th Cir. 1995); *Graceland Fruit, Inc. v. KIC Chemicals, Inc*., 320 F. App'x 323 (6th Cir. 2008).

The Sixth Circuit has also instructed that, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Additionally "[t]he applicant should . . . maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.'" *Graceland Fruit, Inc. v. KIC Chemicals, Inc*., 320 F. App'x 323, 238-29 (6th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). The overarching concern in a fee-shifting determination is that the fees awarded be reasonable. See, e.g., *Blum,* 465 U.S. at 897-98. "Reasonable" means "a rate customary rates charged by local attorneys of comparable experience and expertise. *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995).

Once the lodestar amount is determined, the court has the discretion to adjust the fees based on several considerations. However, "[t]here is a strong presumption that this lodestar figure represents a reasonable fee." *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (quoting *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986)). The court may consider the twelve factors set forth in *Johnson v. Ga. Hwy. Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974). See *Graceland Fruit, Inc. v. KIC Chems, Inc*., 320 F. App'x 323, 328 (6th Cir. 2008); *Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 1999).

The relevant *Johnson* factors are: "(1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client

or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Graceland Fruit*, 320 F. App'x at 329 (citing *Blanchard v. Bergeron*, 489 U.S. 87, 91 n.5, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989)); *Paschal*, 297 F.3d at 435 435 (6th Cir. 2002).

While courts are not required to apply the *Johnson* factors, they may be used as guideposts in determining whether a fee is reasonable, or "one that is adequate to attract competent counsel, but not produce windfalls to attorneys." *Paschal v. Flagstar Bank*, 297 F.3d 431, 434) (6th Cir. 2002). See also, *Nature Conservancy, Inc. v. Sims*, 680 F.3d 672, 678 (6th Cir. 2012); *U.S.Structures v. J.P. Structures*, 130 F.3d 1185, 1193 (6th Cir. 1997). "The Johnson factors are a 'useful catalog' to consider when exercising statutory discretion." *Paschal*, 297 F.3d at 435. "They are not die-hard requirements to be met." *Crosby v. Bowater Inc. Ret. Plan*, 262 F. Supp. 2d 804, 811 (W.D. Mich. 2003).

The party seeking attorneys' fees must submit evidence – invoices, counsel declarations and fee agreements in a manner that enables the court to review the reasonableness of the fees charged. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The inability to determine the reasonableness may warrant a reduction of the fees by the court. *Id.* The prevailing market rate is used to substantiate the reasonableness of the requested hourly rate. *Northcross v. Bd. of Educ.*, 611 F.2d 624, 638 (6th Cir. 1979). The Sixth Circuit has explained, "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.' In addition, "[t]he applicant should . . . maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.'" *Graceland*

*Fruit, Inc. v. KIC Chemicals, Inc.*, 320 F. App'x 323, 328-29 (6th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. at 437).

In this case, broad application of the *Johnson* factors illustrates the reasonable nature of Plaintiff's requested attorneys' fees, which are supported by documentation evidencing Plaintiff's counsels' work. Plaintiff submits herewith counsel declarations, counsels' billable time, and detailed entries of work performed with the hours spent performing the work.

*Time/Labor Required & Expertise/Experience of Counsel*

Plaintiff has depended on Danchuk Law for enforcement of her intellectual property rights since 2017 (Danchuk Decl. ¶ XX). Dmitry Lapin, an associate at Danchuk Law, was assigned to handle the pre-litigation and litigation stages of the infringement that is the subject of this lawsuit (Lapin Decl. ¶ 6).

Mr. Lapin has nine years of legal experience with several of those years being in copyright litigation practice (Lapin Decl. ¶ 3). Mr. Lapin attended New York Law School and graduated cum laude in 2013 (Lapin Decl. ¶ ¶ 2, 3). Mr. Lapin is admitted to practice law in New York, Pennsylvania, New Jersey and Maine, and has significant litigation skills and expertise at the district court level (Lapin Decl. ¶ ¶ 1, 3). Mr. Lapin has a plethora of experience and has significant experience litigating intellectual property cases in federal court. *Id.* While an associate with Danchuk Law, Mr. Lapin's hourly rate for litigation matters was $265 (Lapin Decl. ¶ 5).

Starting in November 2021, Mr. Lapin communicated with Ms. White via email and phone dozens of times to understand the nature of the infringement (Lapin Decl. ¶ 7). Mr. Lapin then further investigated the matter himself in preparation for drafting the subject complaint. *Id.* The complaint was 16 pages long and contained six exhibits. Mr. Lapin communicated multiple times with Defendant's counsel over a period of approximately two months (Lapin Decl. ¶ ¶ 7, 9, 10,

12). When Mr. Lapin left the employ of Danchuk Law, Emily Danchuk, the principal attorney at Danchuk Law, took over the case as lead counsel (Danchuk Decl. ¶ 9).

Ms. Danchuk was admitted to practice law in 2002 and has specialized in "soft" intellectual property law for the past 20 years, performing both transactional and enforcement/litigation work (Danchuk Decl. ¶ 1). Ms. Danchuk attended the University of Pittsburgh School of Law and subsequently relocated to New York City and was employed at a boutique intellectual property firm there (Danchuk Decl. ¶ 2, 3). Ms. Danchuk is admitted to practice law in New York, Pennsylvania and Maine, and started Danchuk Law in 2004 to offer affordable legal services (Danchuk Decl. ¶ 1,5). Ms. Danchuk is also the founder of Copyright Collaborative, an entity that aims to help artists understand their intellectual property rights (Danchuk Decl. ¶ 4). Ms. Danchuk has litigated cases on behalf of copyright owners for approximately fifteen years (Danchuk Decl. ¶ 1).

At the outset, Ms. Danchuk expended significant time at her hourly litigation rate of $315 catching up on the facts and status of the case, seeking admission to practice in this Court and preparing a motion to substitute counsel for Mr. Lapin (Danchuk Decl. ¶ 17). Once she entered her appearance Ms. Danchuk thereafter communicated via telephone and email with Defendant's counsel and Plaintiff's local counsel, Edmund S. Aronowitz, conferred with counsel on a joint discovery plan, revision of proposed joint discovery plan, prepared initial disclosures, reviewed and prepared responses to Defendant's discovery requests, and prepared discovery requests to Defendant (Danchuk Decl. ¶ 29). On May 25, 2022, Plaintiff received Defendant's Rule 68 offer of judgment (Danchuk Decl. ¶ 16). After advising her client of Defendant's offer, Ms. Danchuk performed legal research to determine applicable Sixth Circuit treatment of Section 505 attorneys' fees awards and prepared a comprehensive five-page letter to Defendant: (1) demanding (for the

third time) that Defendant cease sales of the "OMG Snek!" and "Street Cats" products; (2) explaining its refusal of Defendant's Rule 68 offer of judgment; and (3) detailing its position on attorneys' fees to make a counter offer to Defendant (Danchuk Decl. ¶18).

Ms. Danchuk communicated with opposing counsel on numerous occasions, outlined Plaintiff's position vis-à-vis settlement several times for Defendant's counsel, performed legal research and counseled her client on applicable issues (such as the force of Rule 68 offers, potential damages, risks, and awards of attorneys' fees) and prepared Plaintiff's acceptance of the Rule 68 offer (Danchuk Decl. ¶¶ 29-31).

After Defendant's Rule 68 offer of judgment was accepted, Plaintiff's counsel pressed TSP's counsel several times for a discussion to see if settlement on the issue of attorneys' fees could be reached so as to avoid protracted motion practice on the issue (Danchuk Decl. ¶ 28). Unfortunately, Defendant flatly refused to engage in settlement negotiations on the issues of fees. *Id.* Ms. Danchuk has spent a significant number of hours preparing this motion, memorandum and accompanying declarations, and as a result of this expenditure of time, has needed to put aside paying clients' work to present Plaintiff's position to this Court (Danchuk Decl. ¶ ¶ 32). Plaintiff's arrangement with Danchuk Law permits Danchuk Law to recover 37% of all awards or settlements in the case, with the option of retaining all attorneys' fees granted by the Court.

Edmund Aronowitz, the founder of Aronowitz Law, was engaged by Plaintiff to act as local counsel and to provide advice and guidance specific to litigation in this Court (Danchuk Decl. ¶ 11). Mr. Aronowitz has been practicing law for over 16 years and is admitted to practice law in Michigan, Illinois and New York (Aronowitz Decl. ¶¶ 1, 4). Mr. Aronowitz is admitted to practice in a number of U.S. district courts as well as the in the Court of Appeals for the Seventh Circuit. (Aronowitz Decl. ¶ 4). Mr. Aronowitz has an impressive educational background and, after

graduating from Cornell Law in 2005 with honors, he served as a federal law clerk for the Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida, practiced as a litigation associate at the global law firm Clifford Chance US LLP in New York, and worked at various litigation firms where his billing rate as an associate exceeded $560 per hour and subsequently started his own practice (Aronowitz Decl. ¶¶ 2, 3). Mr. Aronowitz has litigated over fifty Lanham Act cases to successful conclusion, directly guided over $22.8 million in class action settlements to final approval and participated in multidistrict class actions that resolved for more than $11.5 billion. (Aronowitz Decl. ¶ 6). Mr. Aronowitz's hourly rate for limited scope local counsel engagements is between $300-400/hour depending on the particulars of the case, and his hourly rate for more complex matters involving greater stakes and responsibility is far higher (Aronowitz Decl. ¶ 8). Mr. Aronowitz's hourly rate in this litigation is $350, and his arrangement with Plaintiff does not involve a contingency fee. (Aronowitz Decl. ¶ 9).

*Relevant Customary/Market Rates*

In calculating whether a requested rate is reasonable under a lodestar assessment, a trial court should initially assess the 'prevailing market rate in the relevant community.' *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). In support of their rates, Plaintiff points this Court to the State Bar of Michigan's Economics of Law Practice 2020 Billing Rate Sheet Summary Report (which can be found online at https://www.michbar.org/file/pmrc/articles/0000155.pdf) ("Report"). The Report affirms that the relevant market rate for: an intellectual property attorney in Michigan has a median average of $368, with a 75th percentile rate of $445; a civil litigation attorney in Michigan has a median average hourly rate of $300, with a 75th percentile hourly rate of $375; an attorney with 6 to 10

years of experience has a median average hourly rate of $250, with a 75th percentile hourly rate of $310; and an attorney with 16 to 25 years of experience has a median average hourly rate of $300, with a 75th percentile hourly rate of $367 and an attorney with . This Report's billing rates sheet demonstrates that all of Plaintiff's counsel's rates fall within the average market rates.

*Contingency*

When an attorney undertakes a matter on a contingency basis, this fact lends additional support to the reasonableness of a requested fee award. See *In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 297 (E.D. Mich. 2001). See also, *Kogan v. Aimco Fox Chase, L.P.*, 193 F.R.D. 496, 504 (E.D. Mich. 2000) ("Plaintiffs' counsel undertook this action on a contingency fee basis and made significant cash outlays to finance it. Further, plaintiffs' counsel addressed at length the risks they assumed by taking this case on a contingency fee basis.")

Plaintiff's counsel took this case on a purely contingency basis, with Plaintiff paying only costs incurred during the litigation. This case has lasted eight months so far, a matter that could have been resolved in month one. Plaintiff's counsel have spent significant time and resources zealously representing Plaintiff's interests, using their best efforts to obtain a successful outcome in this case and to enforce Plaintiff's exclusive rights to her valuable intellectual property, the foundation of her livelihood. In doing so, Plaintiff's law firm has taken on the risk that it would not recoup its time or resources if Plaintiff were unsuccessful in prosecuting her claims or in obtaining attorneys' fees. Given the contingent nature of this litigation and the significant risk of nonpayment, this factor emphasizes the reasonableness of Plaintiff's requested fees.

*Results Obtained*

Finally, Plaintiff stresses the successful results obtained for Plaintiff; while Defendant (allegedly) sold less than $200 in infringing product, Plaintiff's counsel obtained a $5,000 award

for her and judgment against Defendant on all claims. Accordingly, the results that Plaintiff's counsel was able to achieve support the reasonableness of Plaintiff's fees.

## VI. COSTS

Plaintiff is entitled to her costs of $1,339.65 in this action pursuant to Fed.R.Civ.P. 54(d)(1) which states, "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Because Plaintiff is the prevailing party and has submitted a detailed accounting of her costs, this Court should award Plaintiff her costs.

## VII. CONCLUSION

Plaintiff has successfully demonstrated that: she is entitled to an attorney fee award in this case; the authority to make such an award lies with this Court; Plaintiff has succeeded on all her copyright claims, making her the prevailing party in this case; and Plaintiff's requested fees are reasonable under the Johnson factors and the Sixth Circuit dictate.

**WHEREFORE**, for all of the reasons set forth herein, Plaintiff respectfully requests that this Court approve Plaintiff's attorneys' fees, costs and expenses in the amount of $34,464.85 and award any further relief as the Court deems reasonable and just.

Dated: August 4, 2022

Respectfully submitted,
**DANCHUK LAW, LLC**

*s/ Emily A. Danchuk*
Emily A. Danchuk, Esq.
2 Victoria Lane
Falmouth, ME 04105
T: (207) 747-4135
E: emily@emilyesquire.com

Edmund S. Aronowitz (P81474)
**Aronowitz Law Firm, PLLC**

220 S. Main St., Ste. 305
Royal Oak, Michigan 48067
248-716-5421
edmund@aronowitzlawfirm.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing **PLAINTIFF'S MOTION FOR ATTORNEYS' FEES** was served via U.S. First Class Mail, postage prepaid to:

Messrs. Fatabhoy, Jotanovic, and Steen
Dickinson Wright PLLC
500 Woodward Ave., Suite 4000
Detroit, MI 48104

*Attorneys for Defendant Sports and Custom Tees, Inc.*

Dated: August 4, 2022
Falmouth, Maine

**DANCHUK LAW, LLC**

By: */s/ Emily A. Danchuk*
Emily A. Danchuk, Esq.