**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

HILLARY WHITE, an individual,

Plaintiff,

v.

SPORTS AND CUSTOM TEES, INC. d/b/a Tee Shirt Palace, a Michigan Corporation; and DOES 1-10,

Defendants.

No. 2:22-cv-10218

Honorable Judith E. Levy

---

DICKINSON WRIGHT PLLC
Mark A. Jotanovic (P73752)
Yafeez S. Fatabhoy (P83064)
Kory M. Steen (P83170)
2600 W. Big Beaver Road, Suite 300
Troy, Michigan 48084-3312
(248) 631-2050
(844) 670-6009
mjotanovic@dickinsonwright.com
ksteen@dickinsonwright.com
yfatabhoy@dickinsonwright.com
*Attorneys for Defendant*

ARONOWITZ LAW FIRM PLLC
Edmund Aronowitz (P81474)
220 S. Main St., Ste. 305
Royal Oak, Michigan 48067
(248) 716-5421
edmund@aronowitzlawfirm.com

DANCHUK LAW, LLC
Emily Danchuk
2 Victoria Lane
Falmouth, Maine 04105
(207) 464-0099
emily@emilyesquire.com
*Attorneys for Plaintiff*

---

# DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY FEES

## ISSUE PRESENTED [1]

1. Should this Court award Plaintiff's Attorneys' *additional* fees under the discretionary fee-shifting provisions of 17 U.S.C. § 505 when the requested fees are clearly excessive and such an award would result in an unjust result?

**Defendant's Answer:** "No."

**This Court Should Answer:** "No."

[1] In violation of Local Rule 7.1(d)(2), Plaintiff did not submit a concise statement of the issue presented.

# MOST CONTROLLING OR APPROPRIATE AUTHORITY [2]

**Cases**

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

*Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 807–08 (6th Cir. 2005).

*Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 529 F. Supp. 2d 800 (E.D. Mich. 2007).

**Statues**

17 U.S.C. § 505.

[2] In violation of Local Rule 7.1(d)(2), Plaintiff did not submit controlling or most appropriate authority for the relief sought.

## I. INTRODUCTION

This Motion is before the Court, not because Plaintiff Hillary White was unjustly compensated, but because Plaintiff's Attorneys want more money. As this Court knows, on June 21, 2022, Plaintiff, Hillary White, accepted an Offer of Judgment from Defendant, Tee Shirt Palace. *See* ECF No. 18. The Offer of Judgment was for $5,000, which makes sense because this dispute ultimately boils down to a few tee-shirt sales amounting to less than $100 in revenue. While $5,000 far exceeds the revenue of the products at issue, thus adequately compensating Plaintiff, the whole basis for this Motion arises from the fact that Plaintiff's Attorneys admitted that a contingency fee agreement entitled them to 37% of the judgment, amounting to $1850.

Unsatisfied with this fee recovery, Plaintiffs' Attorneys are now seeking an *additional* **$34,464.85** in fees. The most shocking element of this fee calculation is not the fact that the amount in controversy here was less than $100 in revenue, nor the fact that this case quickly settled for an amount far exceeding Plaintiff's actual damages. The most shocking element of this fee calculation is that Plaintiff's Attorneys have allegedly incurred **$17,054.45 in post-judgment fees**. That means that **over half the fees in this case relate to the filing of this Motion**.

As detailed below, Plaintiff's Attorneys are not entitled to any fees under 17 U.S.C. § 505—and, in any event, certainly not more than the $1850 they already

collected. This dispute involved a couple hundred dollars in tee-shirt sales. An award for tens of thousands of dollars to Plaintiff's Attorneys would be unjust and improper—as Defendant has already incurred significant legal fees as a direct result of the litigation tactics and gamesmanship employed by Plaintiff.

## II. BACKGROUND

### A. The Litigation Tactics Employed By Plaintiffs' Attorneys

In the past 2 years, Plaintiff has filed over 10 federal lawsuits. Each lawsuit generally alleged violations of the Copyright Act for similar type drawings. A review of Plaintiff's prior lawsuits shows that shortly after filing a complaint, Plaintiff voluntarily dismisses the case. Thus, the *modus operandi* of Plaintiff's Attorneys is transparent—the strategy is to initiate copyright lawsuits, pressure businesses to pay quick settlements (likely nuisance value sums to avoid costly litigation), and then dismiss the action with prejudice. Undoubtedly, Plaintiff's Attorneys have repeatedly profiteered from this approach—as they know that a protracted lawsuit is much more costly than settlement—regardless of whether White's actual damages are *de minimis* (as they are here). Indeed, as evidence by Plaintiff's admissions in this case, certain damages were actually manufactured by

Plaintiff via purchasing infringing products from Tee Shirt Palace's website to sustain claims against Defendant.[3]

But Plaintiff's Attorneys ran into a problem when they sued Tee Shirt Palace, because it refused to be bullied to settle the case for a sum far exceeding Plaintiff's actual damages. Indeed, as the pleadings show, Plaintiff was forced to settle this case because Tee Shirt Palace utilized Rule 68's Offer of Judgment mechanism; knowing that Plaintiff would not be able to prove any significant amount of damages (and a failure to do so would result in paying Defendant's attorney fees).

Plaintiff's Attorneys have now asked this Court to award $34,464.85 in attorney fees for a case that was not subject to Rule 12(b) motion practice, and settled before any discovery exchange. This exorbitant amount is *in addition to* the $5,000 that Tee Shirt Palace agreed to settle this case for—which included a payoff to Plaintiff's Attorneys in the amount of $1850 (as White's attorneys took 37% of the $5,000 judgment).

[3] The conduct surrounding the manufacturing of damages in this case is particularly troubling. Plaintiff's Attorneys manufactured a dispute regarding the sales of certain products by covertly purchasing them and then attempting to claim that Defendant and its Counsel lied. Indeed, Plaintiff's Attorneys, for whatever reason, instead of working cooperatively, sought to engage in "gotcha" litigation tactics. As the record reveals, at the time Plaintiff's Attorneys first asked about sales, there were none. Then Plaintiff purchased her own products, causing there to be sales—and once again asked if there were any sales. That Defendant subsequently found sales does not mean it misrepresented facts. Rather, it demonstrates Plaintiff's Attorney's gamesmanship in manufacturing an issue.

### B. Defendant's Business Model

Defendant Tee Shirt Palace is a family owned business located in Southfield Michigan engaged in the manufacturing and distribution of custom-printed apparel and trinkets. **Exhibit A** (Declaration of Yafeez S. Fatabhoy) (hereinafter, "Fatabhoy Decl."), ¶¶ 4–5. As part of Tee Shirt Palace's business model, Tee Shirt Palace allows third parties the ability to upload designs to its website. Fatabhoy Decl., ¶ 6. These designs are then advertised on various apparel websites (and other small trinkets-for-sale sites). *Id.* To the extent a consumer purchases a product containing a design uploaded by a third party, the third party receives a portion of the proceeds. *Id.* Critically, Tee Shirt Palace does not approve or sanction these designs, rather it merely allows third parties access to the infrastructure needed to promote and sell designs. Tee Shirt Palace does not turn a blind eye to intellectual property rights, however, as it utilizes software and an algorithm designed to detect copyrights and trademarks. Despite this mechanism, Plaintiff's unpopular works were not detected by Defendant's software.[4]

### B. Plaintiff's Copyrights and Defendant's Minimal Sales

Plaintiff claims ownership and instituted this action based on three copyright registrations: (1) U.S. Copyright Registration No. VA0002163988 ("Coven of Trash

[4] Of course, Defendant has since updated the software to identify White's marks, which should prohibit any further misuse by its customers.

Witches"); (2) U.S. Copyright Registration No. VA0002179490 ("Fluffin' Meowgical"); and (3) U.S. Copyright Registration No. VA0002145132 ("My Eyes Are Up Here"):










(ECF No. 1, ¶¶ 9-10, 31, 39, and 47) (hereinafter, "Asserted Copyrights").

Tee Shirt Palace sold a total of three (3) products bearing the Asserted Copyrights, constituting less than $100 in total revenue.[5] Fatabhoy Decl., Appx. A. Indeed, given the low overall sales, Tee Shirt Palace informed Plaintiff it was interested in quickly resolving the case—so that the parties may conserve both party and judicial resources. Fatabhoy Decl., ¶ 7. Tee Shirt Palace requested that Plaintiff provide an initial settlement offer so that the parties could begin to negotiate a

---

[5] Plaintiff's Motion for Attorney Fees discusses, for a considerable amount of pages, two other designs labeled "OMG Snek!" and "Street Cats." These designs are not at issue in this lawsuit. Thus, facts related to these designs cannot be considered. Rather, it seems the purpose of Plaintiff's incomplete factual recitation here is merely designed to smear Tee Shirt Palace and its Counsel. The irrefutable facts, however, belie Plaintiff's accusations. Indeed, it was *Plaintiff's Attorneys* that engaged in significant gamesmanship and "gotcha" litigation tactics. While Plaintiff's Attorneys can litigate this case however they choose, Defendant should not be held responsible for the inflated expenses associated with litigation tactics.

resolution. *Id.* But Plaintiff's Attorneys never proposed an initial settlement offer, forcing Tee Shirt Palace to file an Answer and incur costs associated with responding. *See* ECF No. 10.

### C. The Parties' Litigation Conduct

After Defendant filed its Answer,[6] this Court provided a Text-Only Order requesting the parties file a joint discovery plan on or before May 31, 2022. Two days after this Order, Plaintiff's Attorneys finally acknowledged that the amount in controversy was very low and that Plaintiff would "return with a settlement demand." Fatabhoy Decl., Appx. B. But, again, Plaintiff failed to provide a settlement demand, which forced Defendant to continue to litigate. Specifically, on May 24, 2022, while awaiting Plaintiff's settlement demand (that never came), Tee Shirt Palace expended the resources necessary to draft a Joint Discovery Plan. Fatabhoy Decl., Appx. C.

The following day, on May 25, 2022, in an attempt to avoid further settlement delays from Plaintiff, Tee Shirt Palace sent a settlement offer of its own in the form of a Rule 68 Offer of Judgment. Fatabhoy Decl., Appx. A. Tee Shirt Palace offered White $5,000, which it believed was far more money than she could receive from a jury verdict (given the exceedingly low sales of less than $100 of products). *Id.*

[6] Tee Shirt Palace waived service of the Complaint, in order to lower costs for Plaintiff. This is further evidence of its continued good faith here.

Significantly, Tee Shirt Palace suspected that this case was likely accepted by Plaintiff's Attorneys on a contingency fee basis—so the $5,000 settlement amount also contemplated a value that Tee Shirt Palace believed would adequately satisfy and compensate Plaintiff's Attorneys as well.

One day after providing the Offer of Judgment, and given that discovery was limited to around three months, Defendant served a Deposition Notice of Plaintiff. Fatabhoy Decl., Appx. D. The deposition was intentionally scheduled to take place *after* expiration of the Rule 68 Offer of Judgment—so acceptance of the Rule 68 Offer would moot this deposition and avoid associated costs. Likewise, Tee Shirt Palace issued discovery requests that were also scheduled to become due after expiration of the Rule 68 Offer of Judgment (again, to avoid associated costs if Plaintiff decided to settle). Fatabhoy Decl., Appx. E.

On June 6, 2022, Plaintiff sent Tee Shirt Palace a response letter that largely rejected the Rule 68 Offer of Judgment and made a counter-offer of $12,000. Fatabhoy Decl., Appx. F. In the letter, to justify a larger settlement amount, Plaintiff's Attorneys represented that their fees were "approximately $8,000." *Id.*

Notably, Plaintiff's response letter did not raise any issue with the Rule 68 Offer of Judgment not being served properly. *Id*. Nevertheless, on June 14 2022, Plaintiff served Tee Shirt Palace with Initial Disclosures. Fatabhoy Decl., Appx. I. In this email, Plaintiff's Attorneys, for the first time, argued that the Offer of

Judgment was not properly effectuated as it was served "via email" and not "hardcopy" mailed to counsel. It is unclear what Plaintiff's Attorneys hoped to gain from arguing that Tee Shirt Palace did not properly serve the Rule 68 Offer of Judgment. What was clear, is that Plaintiff was playing games aimed at harassing Tee Shirt Palace. Specifically, in the same June 14, 2022 correspondence, Plaintiff listed defense counsel, Yafeez Fatabhoy, as a witness and expressed an intent to depose him. *Id.*

While Defendant disagreed with Plaintiff's Attorney's insistence that discovery documents be exchanged by hardcopy and not email (which further inflated costs for both parties, unnecessarily), Defendant told Plaintiff's Attorneys that it would re-send a hardcopy of the Rule 68 Offer of Judgment in the mail—to avoid an unnecessary dispute. Fatabhoy Decl., Appx. J. However, Tee Shirt Palace could not agree to the vexatious deposition of its trial counsel. *Id*. Specifically, Tee Shirt Palace responded:

> As it relates to [counsel's] Deposition, [Tee Shirt Palace] will not be providing you [counsel's] availability. Simply put, your attempt to depose an attorney of record in this case for knowledge as you characterize in your initial disclosures as information "regarding receipt of Dmitry Lapin's email correspondence dated May 4, 2022 and May 12, 2022 providing notice of Defendant's infringement of White's artwork" is contrary to case law. Your description, would make ***every*** attorney who has ever received a correspondence from opposing counsel subject to deposition. Federal jurisprudence expressly disallows this harassment tactic. Specifically, the threshold for a party seeking to depose an opposing party's attorney under *Shelton* is a high one. The party seeking the deposition must establish that "(1) no other

> means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *see also Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002). Applying these factors here shows that you will utterly fail to meet the high burden necessary to take [counsel's] deposition:
>
> First, if you claimed there are no other means to obtain the information, you would be incorrect. Indeed, the communications you seek to ask about are with Mr. Lapin, who practiced at your firm where you are a name partner. Surely, you, as a name partner, would be aware of communications from attorneys employed by you.
>
> Second, the information sought is clearly privileged. Any communication [between counsel and client] is quintessential attorney-client privilege.
>
> Third, you have failed to show how two emails are ***crucial*** to the preparation of the case. You have not shown that, because it simply is not.
>
> To the extent you disagree and intend to notice [counsel's] deposition, please let [Tee Shirt Palace] know by **<u>Thursday, June 16, 2022</u>**. [Tee Shirt Palace] plan[s] on filing a Motion for a Protective Order with the Court on Friday (June 17); so consider this correspondence [a] L.R. 7.1(a) concurrence request. Unless you strike [counsel's] name from your Initial Disclosures and expressly disavow any intent to take [his] deposition, [Tee Shirt Palace] will file [a] motion and seek [] fees relating to the Motion under Fed. R. Civ. P. 37—as this deposition request is a completely meritless tactic that [Tee Shirt Palace] should not have to pay for to defend against.

(*Id.*). Given this analysis and citation to controlling jurisprudence, Tee Shirt Palace thought this matter to be resolved. However, Plaintiff's Attorneys quickly doubled-down on their request to take trial counsel's deposition. Fatabhoy Decl., Appx. K. Given Plaintiff's insistence to take counsel's deposition, Tee Shirt Palace was forced to file a Motion seeking a Protective Order. ECF No. 17-1. Realizing that their

gamesmanship would not be tolerated, and that Plaintiff and/or Plaintiff's Attorneys would be subject to sanctions under Rule 37, roughly two hours after Defendant filed its Motion, Plaintiff contacted Tee Shirt Palace and stated it would be accepting the Offer of Judgment. Fatabhoy Decl., Appx. L. It should not have taken a motion seeking sanctions to prompt Plaintiff to accept an Offer of Judgment. Again, Plaintiff's conduct here supports a finding of gamesmanship and wasted resources caused by the refusal to attempt to resolve this dispute amicably.

Regardless, in subsequent correspondence, Plaintiff's Attorneys stated that they would be willing to resolve the attorney fee dispute for $8,000 dollars—as they projected their fees amounting to roughly $12,000 as of June 21, 2022. In response to Plaintiff's Attorneys' additional fee request, Defendant stated:

> Vis-à-vis your Request for Attorney's Fees, Defendant declines to engage in any negotiations relating to the payment of your Attorney Fees. As we have stated previously, my client has worked to expeditiously and amicably resolve this case from the outset. As just one example, my client provided an extremely reasonable Offer of Judgment, which you eventually accepted. But instead of working amicably to accept the Offer from the outset, and importantly conserve party resources, you instead demanded service by mail—in spite of month's long communications between the parties through email. While you are surely correct that Fed. R. Civ. P. 5 (as you restate below) provides for service via mail, parties attempting to work in good faith to resolve this matter would surely not throw such road blocks. Yet, it seems as if your exercise was solely for my client to accrue additional fees.

Fatabhoy Decl., Appx. M.

The Offer of Judgment was accepted on June 21, 2022 (ECF No. 18) and entered by this Court on July 7, 2022 (ECF No. 20). Less than a month later, on August 4, 2022, Plaintiff filed a Motion for Attorney Fees and increased here prior attorney fee estimate from $12,000 to $34,464.85. The evidence shows that Plaintiff increased her fee request **$22,464.85 since June 21, 2022**—in which the only justifiable attorney work remaining in this case was the instant request for fees. The initial $12,000 dollars of additional attorney fees was already an unreasonable request, but Plaintiff's Attorneys' formal request for an additional $22,464.85 (over $10,000 more than her alleged total fees incurred as of July 21, 2022) is so egregious it borders on frivolous and sanctionable.[7] Indeed, as detailed below, Plaintiff's insistence to unnecessarily expend resources is no better exemplified by the fact that her counsel *admittedly* and *demonstrably* spent more than $17,000 and more than 53 hours since the Offer of Judgment was entered.

### D. Plaintiff's Attorneys' Misleading Representations in the Motion

While unrelated to the present dispute—as no additional copyrights were ever added to this case—Plaintiff's discussion about the "OMG Snek!" and "Street Cats" works warrants discussion (and correction). In the Motion, Plaintiff's Attorneys cast

[7] It appears that Plaintiff's Attorneys unnecessarily pumped up their fees so that the Court would lower the damages, and Plaintiff's Attorneys would still reap a significant award. That should not be tolerated as it promotes attorneys to inflate their fees so that they still receive a somewhat significant award.

pejorative and disparaging remarks towards Tee Shirt Palace and its Counsel, arguing that Defendant has acted with "dishonesty" and made "false representations." ECF No. 22, PageID.177–178. Specifically, Plaintiff discusses Tee Shirt Palace sales of the "OMG Snek!" and "Street Cats" works and argues:

> Defendant's report that there were no sales of product was inaccurate, since Plaintiff purchased the product from the TSP Website (Danchuk Decl. ¶ 15). Once Defendant realized that it had been caught red-handed, it tried to walk back its position, from "absolutely no sales" to "[a] cursory check of [Defendant's] systems showed no sales, but I have asked him to be thorough given your request for confirmation of this fact…" Defendant's counsel then had the audacity to warn Plaintiff's counsel that any sales Plaintiff is aware of must be disclosed in Plaintiff's initial disclosures.

But Plaintiff's characterization of the facts here are misleading. As Plaintiff admits, on May 4, 2022, she requested that Tee Shirt Palace inquire as to whether there were any sales relating to newly accused products. Shortly thereafter, in early May of 2022, Tee Shirt Palace searched its sales system and found no sales, which was later communicated to Plaintiff. Thereafter, Plaintiff *again* asked whether there were any sales relating to these newly accused products. *See* Fatabhoy Decl., Appx. G. (email from Plaintiff's Attorneys requesting that Tee Shirt Palace re-confirm that it had not "made a single sale" of any of the products). This second request was odd, and Tee Shirt Palace's Counsel suspected that Plaintiff's Attorneys were playing a game of "gotcha." Accordingly, Tee Shirt Palace informed Plaintiff that it would do a deeper

dive of its sales system and confirm that no sales existed. And, sniffing out the "gotcha" game, Tee Shirt Palace demanded that Plaintiff turn over any evidence she had of sales pursuant to her obligations under Rule 26. Determined to continue the gamesmanship, Plaintiff never turned over sales documents that were clearly in Plaintiff's possession, custody, and/or control.

Regardless, and during its *second* review of sales records (weeks later), Tee Shirt Palace found four ***new sales*** that had been effectuated shortly before Plaintiff's Attorneys requested a re-confirmation of the sales data. Fatabhoy Decl., Appx. H. (showing that the four sales took place in late May and early June). As Plaintiff admits, she was responsible for manufacturing these new sales, as she "asked a friend to visit the [Tee Shirt Palace] Website and purchase several products bearing copies of [her] 'OMG Snek!' and 'Street Cats' designs." ECF No. 22, PageID.178.[8] So, Tee Shirt Palace was never "caught red-handed," as Plaintiff argues. It reported that it found no sales, which was true when it searched its system in early May. It then re-examined its sales system weeks later at Plaintiff's request for re-confirmation, and subsequently reported the four new sales. Not once did Tee Shirt Palace make a misrepresentation to Plaintiff. On the contrary, it voluntarily offered these sales

[8] What's even more troubling here, is the fact that Tee Shirt Palace allows any customer to upload designs. At the time, Plaintiff knew that her new designs were not being flagged by Tee Shirt Palace's software, so she had the ability to not only manufacture these sales, she could have caused for them to be listed in the first place.

numbers without demanding that Plaintiff serve a related discovery request—and despite the fact that these copyrights were not even alleged in the Complaint. What this exercise does evidence, however, is Plaintiff's Attorneys' gamesmanship and unnecessary increasing of costs. This all could have been avoided had Plaintiff been upfront and honest about sales she knew about—that she caused to be made. Instead, Plaintiff's Attorneys decided to conceal facts and utilize "gotcha" games in the instant Motion for Attorney Fees—all for the purpose of elevating their fees and increasing the amount of money the attorneys, not Plaintiff, received. Accordingly, all these accusations should be ignored by the Court—as they are misleading and unsupported by the facts.

## IV. ARGUMENT

### A. This Court Should Not Award Fees under 17 U.S.C § 505

#### 1. Applicable Law

"The discretion to award attorney fees under § 505 is to be exercised in an evenhanded manner with respect to prevailing plaintiffs and prevailing defendants, and in a manner consistent with the primary purposes of the Copyright Act." *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 807–08 (6th Cir. 2005) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). "There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised." *Id.* (internal quotations omitted). "Several nonexclusive factors may be

considered . . . includ[ing]: frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir.1986)) (quotations omitted). These factors have been further defined by this Court as: (1) whether a party acted with an improper motivation (*i.e.* "predatory, larcenous, or avaricious"); (2) the need to further compensate the plaintiff; and (3) whether an award of fees would deter the defendant from future copyright violations. *See Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 529 F. Supp. 2d 800, 803–04 (E.D. Mich. 2007).

**2. Defendant Acted Reasonably**

As stated above, an award of attorney fees under 17 U.S.C. § 505 is predicated on several non-exclusive factors. One factor that would weigh in favor of awarding fees is a showing that the non-prevailing party acted frivolously or objectively unreasonable. *See Bridgeport Music*, 410 F.3d at 808 (quoting *Lieb*, 788 F.2d at 156). Here, Tee Shirt Palace cannot be said to have acted unreasonably in defending this litigation because it conceded liability under the Act and promptly provided opposing counsel with a very reasonable Offer of Judgment early in the case (around three weeks after answering the Complaint), which was accepted. Tee Shirt Palace did not file a dispositive motion, or play delay games during discovery. It efficiently and effectively advocated for settlement through proper judicial devices and this

case was quickly resolved as a result. Indeed, Plaintiff cannot point to a single instance of frivolity or objective unreasonable conduct. So, this factor weighs against an award of fees.

Another factor is "the need to further compensate the plaintiff." *Thoroughbred Software*, 529 F. Supp. 2d at 804. This factor also weighs heavily against an award of fees. Plaintiff states that she makes her living selling tee shirts bearing her designs. *See* ECF No. 22, PageID.176. Tee Shirt Palace arguably appropriated the sale of a handful of tee shirts from White, which amounted to less than $100 worth of revenue. Fatabhoy Decl. Appx. A. Despite this small damages figure, White recovered $5000 as a result of this lawsuit. And, because she is litigating pursuant to a contingency fee agreement with her attorneys, White is not at all indebted to her attorneys. Indeed, White made $3150 from this lawsuit, while her attorneys made $1850. Put simply, White has made money from this lawsuit—far more money than Tee Shirt Palace made from the sale of a few tee-shirts bearing her designs. There is no dispute that Plaintiff's Attorneys' are the only ones who stand to further profit from an award of fees—despite the fact that they already agreed to a judgment for which they received compensation.

The final factor often utilized by this Court also cuts against an attorney fee award because there is no need to "deter" Tee Shirt Palace from future infringing conduct. *See Thoroughbred Software*, 529 F. Supp. 2d at 804. As reported above,

Tee Shirt Palace has added Plaintiff's designs to its software system, which should prohibit any uploads containing her copyrighted works. Moreover, as a result of Tee Shirt Palace engaging counsel in this case, it has registered under the Digital Millennium Copyright Act (DMCA), which will allow for quicker take-down request processing from copyright and trademark holders. In other words, Tee Shirt Palace has not been dismissive of this suit and has acted quickly to ensure it continues to operate its business in a lawful manner—respecting the intellectual property rights of others.

Notably, Tee Shirt Palace has had already been forced to incur tens of thousands of dollars in legal fees defending against Plaintiff's claims (as well as her attorneys' litigation tactics). Forcing Tee Shirt Palace to pay more than $34,000 in additional fees would do nothing but further embolden Plaintiff's Attorneys to file more federal copyright actions that arise from minimal damages—and despite a defendant's willingness to negotiate an early, out-of-court resolution. Indeed, Tee Shirt Palace is not the party that needs to be deterred here, its Plaintiff's Attorneys who need to be deterred from litigating future cases in the manner that they did here.

**3. Plaintiff Acted Unreasonably**

Acting with an improper motivation (*i.e.* "predatory, larcenous, or avaricious") is a factor that this Court considers when deciding whether fees are proper under 17 U.S.C. § 505. *See Thoroughbred Software*, 529 F. Supp. 2d at 804.

Again, White has not acted unreasonably in seeking to protect her copyrights. Her attorneys, however, have acted in a predatory manner. As reported above, White's attorneys (1) filed this lawsuit while initial settlement talks were getting started; (2) refused to provide an initial settlement demand until after they had expended billable hours on certain preliminary tasks; (3) jeopardized settlement negotiations by insisting to pile an additional $8,000 in fees onto Tee Shirt Palace's $5,000 offer (as it is evident that the $5,000 figure was acceptable to their client); (4) created pointless discovery issues, such as "service by regular mail" as opposed to email (despite the fact that all prior communications had been via email); continuously threatened to depose Tee Shirt Palace's trial counsel (causing the need for Tee Shirt Palace to file a Motion for a Protective Order); and, (5) now, expending an absurd amount of hours on a Motion for Attorney Fees for the purpose of doubling the amount of attorney fees that they had incurred from inception of this case to the judgment.[9] This conduct weighs against an award of attorney fees.

In the Motion, Plaintiff's Attorneys harp on the factor of "compensation" and repeatedly state that White makes her living from these copyrighted marks. But this fact has no bearing on the present motion or the Court's analysis—as we are not discussing compensating White at this juncture, we are discussing the issue of

---

[9] As of the date of the Judgment, Plaintiff's Attorneys stated that they had incurred $12,000 in fees.

whether this Court should order that additional compensation be awarded to her attorneys. As stated, Plaintiff's Attorneys have already accepted a judgment that resulted in fees being paid to them under a contingency fee agreement. If this judgment was unsatisfactory, Plaintiff should not have agreed to it.[10]

Plaintiff's Attorneys also raise the issue of deterrence and argue that Tee Shirt Palace defending itself in this lawsuit means that Tee Shirt Palace has no respect for the intellectual property rights of others. *See* ECF No. 22, PageID.188. ("Defendant is apparently under the impression that its copyright infringement should be allowed to continue unfettered, that artists enforcing their rights against this infringement are copyright trolls, and that it can squander this Court's time and resources in furtherance of its mission to directly contradict the U.S. Copyright Act simply for its own convenience and profit."). But Tee Shirt Palace was, and still is, defending itself against an attorney fee shakedown—not the merits of this case. Indeed, this

[10] Notably, Plaintiff's Attorneys complain that the compensation they received as a result of their contingency fee agreement resulted in an uneven work-to-recovery ratio. But that's the risk that Plaintiff's Attorneys decided to assume when they entered into a contingency fee agreement. Indeed, the very reason that our profession allows contingency fee agreements is the tradeoff that exists in which there is sometimes no compensation for taking a case, and other times there is a massive windfall. Again, this is a risk assumed by learned counsel. Yet, here, Plaintiff's Attorneys seek to circumvent this system by recovering fees at an inflated billable-hour rate after they have already recovered a portion of the judgment. If this case had involved a lot of sales, Plaintiff's Attorneys would have received more money—but this case involved only a few tee-shirt sales, so any attorney fee award here should (and does) reflect that.

case involved the sale of a few tee-shirts. Tee Shirt Palace was always open to discussing compensation relating to White's actual damages. Tee Shirt Palace was not, however, open to discussing an exorbitant settlement payment as a "nuisance-value" payoff. Indeed, contrary to Plaintiff's arguments, the facts show that Tee Shirt Palace does respect intellectual property rights—as it updated its system and registered under DMCA as a result of this lawsuit. So Plaintiff's accusations are meritless. As detailed above, an award of attorney fees would do nothing but add insult to injury—there is no deterrence value in awarding Plaintiff's Attorneys further compensation.

Accordingly, this Court need not decide the below issues, *i.e.*, whether Plaintiff's Attorneys' fees are excessive or inflated because this Court can (and should) simply decide that, in its discretion, this case does not warrant an award of fees under 17 U.S.C. § 505.

### B. Even if Additional Fees Were Proper, the Requested Attorney Fees and Hours Spent Are Clearly Excessive

Plaintiff's Attorneys recite to this Court their obligations under the lodestar method, and acknowledge that it is their burden to prove "the fee applicant bears the burden of establishing entitlement to an award and documenting the ***appropriate hours expended*** and hourly rates." ECF No. 22, PageID.191 (emphasis added). However, Plaintiff's Attorneys only discuss and justify in their Motion the reasonableness of their hourly rates, which Defendant does not dispute. Plaintiff's

Attorneys completely avoid discussing the hours that they claim to have spent on this case, and why these hours were "appropriate," which is the sole issue Defendant has with their fee calculation.

The most obvious issue is the evidence of inflating hours spent on this case *after* the case was closed and a judgment was entered. Specifically, the Notice of Acceptance of Judgment was entered in this case on June 21, 2022. Thereafter, Plaintiff's Attorneys allegedly spent **53.83 post-judgment hours**[11] that ultimately related to bringing this Motion for Fees. For the Court's benefit, multiplying Plaintiff's Attorneys' rates by these hours totals **$17,054.45 in post-judgment fees**. Incredibly, this means that more than half the fees allegedly incurred in this case, to date, are post-judgment fees. Clearly, Plaintiff's Attorneys are intentionally inflating their expended hours by over-billing this post-judgment motion because they believe that they will be collecting on these fees. For this reason alone, the Court should decline to award any fees whatsoever—as the egregiousness of Plaintiff's Attorneys' calculation here is palpable. *At the very least*, all of the post-judgment fees should be stricken as a result of these shocking billing entries.

[11] This number of hours spent on the post-judgment attorney fee request is actually larger than 53.83, as the number of hours was calculated by tallying time entries after June 21, 2022. However, there are block-billed time entries on June 21, 2022 that state they are comprised of time relating to "strategy on attorney's fees." ECF No. 22-1, PageID.210.

Significantly, Plaintiff's Attorneys argue throughout their Motion that Tee Shirt Palace has been the unreasonable party here. Tellingly, however, Tee Shirt Palace's Counsel previously engaged in a lodestar calculation of its own when it requested its attorney fees as a sanction for Plaintiff's attempts to depose trial counsel. *See* ECF No. 17, PageID.128–132. When conducting its own lodestar calculation in relation to a similarly-sized motion, Defendant asked the Court to apply the "market average rate" (which resulted in a $100 downward departure from the actual hourly rate), and submitted an hours expenditure of 8 hours. This means that, in relation to a similar motion, Tee Shirt Palace's Counsel calculated a $2,000 attorney fee (*see* ECF No. 17)—which is eight and a half (8.5) times less money than Plaintiff's Attorneys have requested in relation to their attorney fees motion. Put simply, actions speak louder than words: under similar circumstances, Defendant calculated a reasonable fee of $2,000, whereas Plaintiff's Attorneys have calculated an unreasonable fee of over $17,000.

As stated above, Plaintiff's Attorneys do not even attempt to justify or discuss the hours spent on matters involved in this litigation—because they are trying to conceal the fact that they have run up their fees since the judgment was entered. Such conduct necessarily warrants an extreme and drastic downward departure (if not a wholesale denial of the fee request).

Further, assuming *arguendo* that the Court was inclined to award Plaintiff's Attorneys additional fees here (despite the above conduct), there are other time entries that should be reduced or stricken. Specifically, several of Emily Danchuk's other time entries appear to be an unreasonable time expenditure (*e.g.*, Ms. Danhcuk spent 5.55 hours ($1,748.25) drafting a five-page letter to counsel for Tee Shirt Palace). And, other time entries should be stricken for her failure to delegate administrative tasks (*e.g.*, an administrative assistant (either her own, or her local counsel's) should have handled certain tasks related to her *pro hac* appearance in this case). Additionally, there are a portion of fees that relate to Dmitry Lapin's departure from the firm—but Tee Shirt Palace should not bear the expense of Plaintiff's substitution of counsel (and the costs associated with Ms. Danchuk getting up to speed). These fees are not incidental to the case.

Notably, the downward departures that Tee Shirt Palace advocates for are supported by case law, which is a relevant factor when assessing any attorney fee award. *See, e.g.*, *Marshall & Swift v. BS & A Software*, 871 F.Supp. 952 (W.D. Mich. 1994) (where the Court awarded $38,000 in attorney fees when a party litigated a case through summary judgment); *Verch v. White Rock Security Group, LLC* (N.D. Tex. 2020) (where the Court awarded around $3,000 in attorney fees for a default judgment); *Randolph v. Dimension Films,* 634 F.Supp.2d 779 (S.D. Tex. 2009) (where the Court award the prevailing party $3,000 in fees when Defendant

was successful on a Motion to Dismiss); *see also Graceland Fruit, Inc. v. KIC Chems, Inc.*, 320 F. App'x 323, 328 (6th Cir. 2008).

## V. CONCLUSION

In sum, "[D]efendant has paid a substantial penalty for its transgressions, and the justice of the cause requires no additional tribute to be extracted from them." *Thoroughbred Software*, 529 F. Supp. 2d at 804. As detailed above, White has been compensated, Defendant has been deterred, and there was no gamesmanship attributable to Defendant that would warrant an award of additional attorney fees. Accordingly, Defendant respectfully requests that this Court deny Plaintiff's Motion for Attorney Fees, and put an end to this case.

Respectfully submitted,

DICKINSON WRIGHT PLLC

August 18, 2022

*<u>/s/ Kory M. Steen</u>*
Kory M. Steen (P83170)
Yafeez S. Fatabhoy (P83064)
Dickinson Wright PLLC
350 South Main Street, Suite 300
Ann Arbor, MI 48104
yfatabhoy@dickinsonwright.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 18, 2022, he filed this document with the Court's electronic filing system, which caused notice to be sent to all counsel of record.

Respectfully Submitted,

DICKINSON WRIGHT PLLC

/s/ *Kory M. Steen*