**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| HILLARY WHITE, an individual, | Case No. 22-cv-10218 |
| Plaintiff, | Honorable Judith E. Levy |
| v. | |
| SPORTS AND CUSTOM TEES, INC. | |
| Defendant. | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEE**

Pursuant to LR 7.1(e)(1)(B), Plaintiff submits this reply. Defendant's response in opposition crafts an inaccurate story about Plaintiff's ill motives in bringing and maintaining this lawsuit, Defendant's attempts to accommodate Plaintiff, and Defendant's need to stave off Plaintiff's predatory ways. Defendant would have this Court believe that it tried to resolve this matter quickly and amicably and that Plaintiff has obstructed those attempts. Defendant would also have this Court imagine that Plaintiff has entrapped Defendant with its trolling trickery and that it is a hapless victim bullied by Plaintiff. However, and despite Defendant's best efforts to carefully reframe the story, the facts and evidence do not support Defendant's version, particularly concerning Defendant's infringement of Plaintiff's "OMG Snek!" and "Street Cats" designs (the "Additional Designs"). Further,

Defendant offers no argument against the authority cited by Plaintiff that an award of attorney's fees in a copyright case is the rule rather than the exception. Accordingly, the Court should grant Plaintiff's motion and award the attorney's fees requested consistent with the purposes of the Copyright Act.

*The Facts Regarding Defendant's "OMG Snek!" and "Street Cats" Infringements*

Plaintiff's February 3, 2022, Complaint (ECF No. 1) alleged Defendant's infringement of three of Plaintiff's copyrighted artworks called "Coven of Trash Witches," "Flufflin Meowgical," and "My Eyes Are Up Here." (the "Subject Designs"). After the Complaint was filed, Plaintiff discovered Defendant's infringement of two more of her protected artworks called "OMG Snek!" and "Street Cats" (the "Additional Designs").

On May 4, 2022, Plaintiff's counsel sent Defendant's counsel notices of copyright infringement for three URLs listing the Additional Designs. (*See* Lapin Decl. App. B, ECF No. 22-2 at PageID 222) (the "Additional URLs"). Plaintiff specifically advised Defendant: "We intend to amend the complaint to include this artwork, should we not resolve this matter in a timely manner." *Id.* Plaintiff further requested that Defendant "provide financial records concerning all sales, for all listings (including the two Street Cats listings provided in this email). I will then review and discuss with my client, then return with a settlement demand." *Id.* On May 12, 2022, having received no response from Defendant's counsel and with the

Additional URLs still active, Plaintiff's counsel sent Defendant's counsel a follow-up email. (*See* Lapin Decl. App. C, ECF No. 22-2 at PageID 304; *see also* Lapin Decl., ECF No. 22-2, ¶¶ 9 and 10 at PageID 219-220).

On May 25, 2022, at 9:27 p.m., Defendant sent Plaintiff an eleven-page letter called "Letter from Y Fatahboy.pdf." (*See* Fatahboy Decl., App. A, ECF No. 24-1 at PageID 276-286). This letter disclosed $97.86 worth of sales of the Subject Designs but said nothing about sales of the Additional Designs at all. This letter also included a procedurally defective "Offer of Judgment Pursuant to Fed. R. Civ. P. 68" purporting to offer judgment against Defendant "for **all** copyright claims that have been, **or could have been**, asserted…in this action[.]" (*See* Fatahboy Decl., App. A, ECF No. 24-1 at PageID 286 (emphasis added)). Under Fed. R. Civ. P. 18, Plaintiff's claims for the Additional Designs arguably could have been asserted against Defendant here and Plaintiff directly disclosed an intent to amend the complaint if the parties could not settle. On May 26, 2022, Plaintiff had product ordered from the TSP Website to ensure that Defendant was not being dishonest about sales of the Additional Designs as Defendant said nothing about them in the May 25, 2022 letter. (Danchuk Decl. ¶ 15, ECF No. 22-1 at PageID 203).

On June 6, 2022, Plaintiff's counsel sent Defendant's counsel a comprehensive letter providing Plaintiff's third notice of Defendant's continued infringement of the Additional Designs, and "a counteroffer of $12,000 in full and

complete settlement of this matter" in response to Defendant's deficient Rule 68 offer. (*Id*. at ¶ 18, PageID 204; *see also* Fatahboy Decl., App. F, ECF No. 24-1 at PageID 301-302). The conditions of the counteroffer, including "Confirmation that sales resulting from [the Additional URLs] do not exceed $200 in total," made clear that any resolution of this action would involve both the Subject Designs and the Additional Designs as it would be highly inefficient and contrary to the rules against claim splitting for Plaintiff to bring two lawsuits, one for the Subject Designs and another for the Additional Designs.

On June 10, 2022, at 3:23 p.m., *fifteen* days after Plaintiff ordered product from the TSP Website, Defendant's counsel responded to Plaintiff's June 6th letter, advising that the Additional URLs were taken down and there were "absolutely no sales" of product bearing the Additional Designs. (Danchuk Decl. ¶¶ 21, 22, ECF No. 22-1 at PageID 204; *see also* Fatabhoy Decl., App. G, ECF No. 24-1 at PageID 307). Plaintiff's counsel responded to Defendant's counsel's 3:23 p.m. email within 15 minutes, asking Defendant "to confirm, your client has stated to you that is has not made one single sale" of product bearing the Additional Designs. (*See* Fatabhoy Decl., App. G, ECF No. 24-1 at PageID 306).[1]

---

[1] While the time stamp on the email at PageID 306 states "2:47 PM" while the time listed on the preceding email at PageID 307 states "3:32 PM"; as can be clearly seen from context, the email at PageID 306 came in response to, and after, the email at PageID 307, regardless of the times indicated on the face of these documents.

Defendant's allegations of a "set-up" simply do not line up with this chronological timeline, and frankly, defy both logic and the evidence; Defendant would have this Court believe that Plaintiff framed Defendant, first asking for sales numbers and ***thereafter*** ordering product.[2] However, as Defendant's own evidence plainly shows, Plaintiff's friend Jessica Andrews ordered product on May 26, 2022, ***fifteen days before*** Defendant reported definitively that there were no sales of product bearing the Additional Designs.[3] (Fatabhoy Decl., App. H, ECF No. 24-1 at PageID 310-314). Now, working outside all bounds of integrity, Defendant's counsel attempts to utilize their delay in responding to Plaintiff's requests for sales data about both the Subject Designs and Additional Designs as an excuse for Defendant's misrepresentations about sales.

Even under Defendant's version of the story, the *best-case* scenario for Defendant is that it is a blatantly willful copyright infringer offering infringing products on its website for over a month after receiving notice of Plaintiff's copyrights for the Additional Designs. According to Defendant's version of the facts, Mr. Fatabhoy supposedly reported Plaintiff's counsel's May 4th and May 12th

---

[2] Plaintiff's counsel routinely requests her clients to make orders of infringing product in cases where product remains for sale after takedown requests to ensure that the infringer is not lying about sales. Like here.

[3] This is the first that Plaintiff is hearing about a 'Valerie O'Brien' who purchased product on June 5, 2022. Plaintiff does not know, and is not associated with, Ms. O'Brien.

emails (the "May Emails") to his client, or at least obtained sales information regarding the Additional Designs in early May.[4] However, and for unknown reasons, Mr. Fatabhoy chose to remain silent in the face of Plaintiff's communications and to sit on those sales numbers for over a month, despite Plaintiff's repeated requests for the same. Additionally, for Defendant's version of the story to be true, either Mr. Fatabhoy did not counsel his client to remove the Additional URLs or his client blatantly ignored his counsel to do so, because they remained active until June 10, 2022. Either way, Defendant's conduct warrants an award of attorneys' fees to deter Defendant from further copyright infringement, a principal purpose of the Copyright Act.

*Defendant's Other Inaccurate or Misleading Statements of "Fact"*

While Defendant's response recites certain "facts," it excludes evidentiary support for the same, as Defendant's "facts" are either inaccurate or misleading. For example, and skewing towards defamation, Defendant states that, "Plaintiff knew that her new designs were not being flagged by Tee Shirt Palace's software, so she had the ability to not only manufacture these sales, she could have caused for them to be listed in the first place," (*see* Def. Opp'n p. 12, fn. 8), ignoring Plaintiff's

[4] Interestingly, Mr. Fatabhoy's declaration does not grant any clarity on the date that he received the sales numbers for the Additional Designs from his client. Mr. Fatabhoy is the only person with first-hand knowledge of this information, yet his declaration remains decidedly silent on the issue.

request for the source of the Subject Designs or Additional Designs posted to Defendant's website.[5] (*See, e.g.*, Fatahaboy Decl., App. B, ECF No. 24-1 at PageID 288 ("We also seek identification of all users that posted the infringing content, including names, addresses, contact information, etc. Please advise if your client is willing to provide his information without a subpoena.").

Defendant also skews the truth about the parties' conduct. Defendant states that "…as a result of Tee Shirt Palace engaging counsel in this case, it has registered under the [DMCA]…" What Defendant's counsel omits is that Defendant registered under the DMCA on August 18, 2022, the same day that it filed its opposition to Plaintiff's instant motion.[6] Defendant continues, "…White's attorneys…filed this lawsuit while initial settlement talks were getting started." (Def. Opp'n p. 17). Plaintiff is unaware of any such settlement talks and further submits that Defendant did not communicate with Plaintiff until <u>after</u> the lawsuit was filed.

<u>*Service of Discovery & Rule 68 Offer*</u>

Defendant's next argument is that Plaintiff's "gamesmanship" extended to service in this litigation, and that Plaintiff's failure to simply accept defective service was unreasonable and "further inflated costs for both parties, unnecessarily."[7] (See

---

[5] The source of the artwork was not Plaintiff or anyone acting on her behalf.
[6] Despite being advised by Plaintiff's counsel of the DMCA Safe Harbor's requirement that it designate an agent with the U.S. Copyright Office.
[7] Plaintiff is unsure how the mailing of these documents to effectuate proper service, or simply agreeing in writing to electronic service as Plaintiff proposed

Def. Opp'n p. 7). The fact is, Defendant's counsel dropped the ball in serving their discovery requests, their deposition notice, and their Rule 68 offer, and tried to turn the blame on Plaintiff for insisting on proper service. Defendant emailed these documents[8] to Plaintiff's counsel and then acted put out because Plaintiff refused to engage in the casual practice of law in federal court.

Indeed, the reason for Plaintiff's requirement that Defendant effect proper service of its Rule 68 offer is put plainly in Defendant's own brief: to avoid an unnecessary dispute. As this Court is certainly aware, Rule 68 practice can be complex, and judgments have been won or lost based solely on a court's interpretation of the fine language in a Rule 68 offer of judgment. Plaintiff, like this Court, plainly relies upon, follows and respects the rules of legal practice, and Defendant's counsel's flagrant disrespect for these rules only reinforces Plaintiff's position.

*Attorneys' Fees*

Defendant argues that Plaintiff's fee request is unwarranted on the grounds that Plaintiff's counsels' hours have been inflated and that it has acted in a "predatory" and unreasonable manner. Plaintiff is not the problem party. Plaintiff's

---

and as the rules requires, inflated the costs for both parties, and Defendant is silent on the specifics.

[8] Plaintiff notes that Defendant's deficient May 25 Rule 68 offer was not even dated. *See* Fatabhoy Decl. App. A.

counsel practically begged Defendant's counsel to engage in negotiations regarding attorneys' fees to avoid any party spending time or money on a motion. (*See*, e.g., Fatabhoy Decl., App. M). Now Defendant objects to those fees, surprised to be faced with the consequences of refusing to negotiate in a reasonable fashion.[9]

The Sixth Circuit has held that "a reduction in attorney fees is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349-50 (6th Cir. 2000). Additionally, the Sixth Circuit has held that "there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages." *Building Service Local 47 v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). *See also City of Riverside v. Rivera*, 477 U.S. 561, 581 (1986).

All in all, Plaintiff's lead counsel spent a total of 45.54 hours on its motion for attorneys' fees, for a total cost of **$14,345.10**.[10] (Danchuk Decl., App. E). Plaintiff's local counsel expended a total of 1.50 hours reviewing the motion, for a total of **$525.00**. (Aronowitz Decl., App. A). Because Plaintiff did not have the opportunity to present the specific facts of this case to this Court, Plaintiff had to carefully and clearly set forth the facts in this case and then make its case for

---

[9] To compare, Plaintiff has spent approximately 13 hours preparing this 7-page reply motion.

[10] Defendant's calculations of Plaintiff's attorneys' fees include over $1,300 in Plaintiff's costs.

attorneys' fees, essentially preparing a summary judgment motion for this Court's consideration. Plaintiff's counsel's expenditure of 45 hours over a three-week period for researching and preparing a 25-page motion and 12 pages of counsel declarations is not unreasonable. Interestingly, Defendant's own opposition brief asserts that Defendant has been "forced to incur ***tens of thousands of dollars in legal fees*** defending against Plaintiff's claims…" (Def. Opp'n p. 16). So while Defendant can claim reasonableness of its own counsels' fees, Plaintiff's counsel apparently is not entitled to charge a similar amount.

**CONCLUSION**

In light of all of the foregoing facts, Plaintiff respectfully requests that this Court award her full attorneys' fees in this case.

Dated: August 30, 2022

Respectfully submitted,
DANCHUK LAW, LLC
*s/ Emily A. Danchuk*

Emily A. Danchuk, Esq.
2 Victoria Lane
Falmouth, ME 04105
T: (207) 747-4135
E: emily@emilyesquire.com
Edmund S. Aronowitz (P81474)
Aronowitz Law Firm, PLLC
220 S. Main St., Ste. 305
Royal Oak, Michigan 48067
248-716-5421
edmund@aronowitzlawfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION FOR PLAINTIFF'S MOTION FOR ATTORNEYS' FEES** was served via U.S. First Class Mail, postage prepaid to:

Messrs. Fatabhoy, Jotanovic, and Steen
Dickinson Wright PLLC
500 Woodward Ave., Suite 4000
Detroit, MI 48104

*Attorneys for Defendant Sports and Custom Tees, Inc.*

Dated: August 30, 2022

Falmouth, Maine

**DANCHUK LAW, LLC**

By: *<u>/s/ Emily A. Danchuk</u>*
Emily A. Danchuk, Esq.