UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Hillary White,

                          Plaintiff,           Case No. 22-10218

v.                                             Judith E. Levy
                                               United States District Judge
Sports and Custom Tees, Inc.,
d/b/a Tee Shirt Palace,                        Mag. Judge Jonathan J.C. Grey

                          Defendant.

_____/

OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR ATTORNEY FEES [22]

Before the Court is Plaintiff Hillary White's motion for attorney

fees. (ECF No. 22.) For the reasons set forth below, the Court grants in

part and denies in part Plaintiff's motion.

I.      Background

Plaintiff is an artist and the author and owner of three pieces of art:

"Coven of Trash Witches," "My Eyes Are Up Here," and "Fluffin'

Meowgical" (the "Subject Designs"). (ECF No. 1, PageID.2–3, ¶¶ 5, 9.) All

three of the Subject Designs were registered with the United States

Copyright Office with effective dates in 2019. (*See id.* at PageID.3, ¶ 10.) Defendant Sports and Custom Tees, Inc. d/b/a Tee Shirt Palace is a company in the business of "manufacturing and distribution of custom-printed apparel and trinkets." (ECF No. 24-1, PageID.271–272, ¶¶ 3, 5.) Defendant "allows third parties the ability to upload designs on its website which are then advertised to the public for sale." (*Id.* at PageID.272, ¶ 6.) "To the extent a customer purchases a third[-]part[y's] design, the third party receives a portion of the proceeds. (*Id.*) Defendant "does not sanction or approve these designs." (*Id.*)

In November 2021, Plaintiff discovered that products using her "Coven of Trash Witches" and "My Eyes Are Up Here" designs were being offered for sale on Defendant's website. (ECF No. 1, PageID.4, ¶ 17.) Plaintiff attempted to identify Defendant's designated agent with the U.S. Copyright Office to submit a takedown notice for the offending listings under the Digital Millennium Copyright Act ("DMCA"). (*Id.* at PageID.5, ¶ 18.) However, Defendant had not designated an agent to receive DMCA takedown notices. (*See id.* at PageID.5, ¶¶ 19–20.) Plaintiff then submitted a DMCA takedown notice to Fastly.com, Defendant's content delivery network on November 29, 2021. (*Id.* at

PageID.5, ¶ 21.) Fastly.com forwarded Plaintiff's notice to Defendant. (*Id.*) One week later, Plaintiff confirmed that the two infringing listings were still active on Defendant's website and discovered approximately twenty-five additional infringing listings. (*Id.* at PageID.5, ¶ 22.) Plaintiff notified Fastly.com of these additional infringing listings. (*Id.*)

On December 8, 2021, Plaintiff discovered additional infringing listings on Defendant's website offering apparel with the "Fluffin' Meowgical" design. (*Id.* at PageID.5, ¶ 23.) On December 14, 2021, Plaintiff's counsel, Dmitry Lapin of Danchuk Law, LLC, sent Defendant a cease-and-desist letter detailing the infringing listings and demanding their immediate removal. (*See id.* at PageID.6, ¶ 24; ECF No. 22-2, PageID.226.) Defendant removed all but one of the infringing listings prior to the filing of the complaint. (ECF No. 1, PageID.6, ¶ 25.)

Plaintiff filed her complaint on February 3, 2022. (ECF No. 1.) The complaint alleged claims of copyright infringement and vicarious and/or contributory copyright infringement for each of the subject designs. (*Id.* at PageID.11–15, ¶¶ 58–79.) Plaintiff retained Edmund Aronowitz of Aronowitz Law Firm PLLC as local counsel. (*See* ECF No. 3; ECF No. 22-3, PageID.232.) On May 2, 2022, Defendant filed its answer to the

3

complaint with affirmative defenses. (ECF No. 10.) Mark Jotanovic, Yafeez Fatabhoy, and Kory Steen of Dickinson Wright PLLC filed appearances on behalf of Defendant. (ECF Nos. 8, 9, 12.)

During the pendency of the litigation, Plaintiff discovered three additional infringing listings using two of her other artworks, "Street Cats" and "OMG! SNEAK!" (the "Additional Designs").[1] (*See* ECF No. 22-2, PageID.222.) On May 4, 2022, Mr. Lapin emailed Mr. Fatabhoy, notifying him of the infringing listings, requesting that they be removed by Defendant, and demanding sales information for infringing products. (*Id.*) On May 12, 2022, Mr. Lapin followed up with Mr. Fatabhoy, as the infringing listings using the Additional Designs were still active on Defendant's website. (*Id.* at PageID.224.) Mr. Lapin also informed Mr. Fatabhoy that it was his last day with Danchuk Law and that Emily Danchuk would be replacing him as Plaintiff's counsel. (*Id.*) Ms. Danchuk filed a motion for substitution of counsel (ECF No. 13), which the Court granted. The parties submitted a joint discovery plan and a stipulated protective order and commenced discovery. (*See* ECF Nos. 14, 15)

---

[1] It appears that "Street Cats" was registered with the U.S. Copyright Office. (*See* ECF No. 22-2, PageID.222.) However, it does not appear that "OMG! SNEAK!" was registered with the U.S. Copyright Office at the time. (*See id.*)

4

On May 25, 2022, Mr. Fatabhoy sent a letter and offer of judgment under Federal Rule of Civil Procedure 68 to Plaintiff's counsel. (ECF No. 24-1, PageID.276–286.) The letter noted that sales of the Subject Designs totaled $97.86 and offered to settle the matter for $5,000. (*Id.* at PageID.277.) However, Defendant refused to make any offer concerning attorney fees, asserting that "there is no basis for an award of attorney fees." (*Id.*) On June 6, 2022, Ms. Danchuk sent a letter to Mr. Fatabhoy, which again demanded the removal of the listings for the Additional Designs. (*Id.* at PageID.298–299.) Ms. Danchuk's letter also disputed Defendant's contention regarding attorney fees, indicated that Plaintiff's current attorney fees were approximately $8,000, and offered a "full and complete settlement" of the matter for $12,000. (*Id.* at PageID.299–301.) The parties continued to correspond regarding a potential settlement of the attorney fees issue, but none was reached. (*See id.* at PageID.307, 336–337.)

Plaintiff accepted Defendant's Rule 68 offer of judgment on June 21, 2022. (ECF No. 18.) The Rule 68 offer expressly excludes the issue of attorney fees. (*Id.* at PageID.161; *see also* ECF No. 24-1, PageID.334.) On

July 7, 2022, the Court entered judgment in favor of Plaintiff in the amount of $5,000. (ECF No. 20.)

On August 4, 2022, Plaintiff filed this motion seeking attorney fees and costs. (*See* ECF No. 22.) Defendant filed a response opposing any award of attorney fees. (ECF No. 24.) Plaintiff filed a reply (ECF No. 29),[2] and Defendant filed a sur-reply. (ECF No. 30.)

## II.   Attorney Fees

Plaintiff seeks an award of $33,125.20[3] in attorney fees under the Copyright Act, 17 U.S.C. § 505. (*See* ECF No. 22, PageID.172, 198.) Defendant opposes Plaintiff's requested award, asserting that Plaintiff is not entitled to attorney fees under § 505 and that the requested award is

---

[2] Plaintiff originally filed her reply on August 24, 2022 (ECF No. 25). On August 26, 2022, Defendant moved for leave to file a sur-reply or an order striking Plaintiff's reply for failing to comply with the Eastern District of Michigan's Local Rules. (ECF No. 26.) On August 29, 2022, Plaintiff filed an ex parte motion seeking leave for the Court to accept her reply as previously filed or to allow her to file "an oversize reply brief of 10 pages after reformatting." (ECF No. 27.) That same day, the Court entered an order striking Plaintiff's original reply, granting Plaintiff's ex parte motion to file a longer reply brief, and granting Defendant's motion for leave to file a sur-reply. (ECF No. 28.)

[3] Plaintiff's motion does not specify the specific amount of attorney fees sought but requests "attorney[] fees and expenses in the total amount of $34,464.85." (ECF No. 22, PageID.172.) Plaintiff later clarifies that she is seeking $1,339.65 in costs. (ECF No. 22, PageID.198.) As such, attorney fees account for $33,125.20 of Plaintiff's requested award.

unreasonable. (*See* ECF No. 24.) As set forth below, the Court concludes that an award of attorney fees under § 505 is warranted but that Plaintiff's requested award is unreasonable and must be reduced. Accordingly, Plaintiff's request for attorney fees is granted in part and denied in part.

### A.    Attorney Fees Under the Copyright Act

#### i.    *Legal Standard*

Under § 505 of the Copyright Act, "the court may . . . award a reasonable attorney's fee to the prevailing party" in a copyright action. 17 U.S.C. § 505. The Supreme Court has observed that the text of § 505 "eschews any 'precise rule or formula' for awarding fees" and does not specify "standards that courts should adopt, or guideposts that they should use, in determining when such awards are appropriate." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (citation omitted). "The grant of fees and costs 'is the rule rather than the exception and they should be awarded routinely.'" *Balsley v. LFP, Inc.*, 691 F.3d 747, 773 (6th Cir. 2012) (quoting *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008)). Nevertheless, "the decision to grant attorney's fees remains within the trial court's

7

discretion." *Id.* (citations omitted). And "a district court may not 'award[ ] attorney's fees as a matter of course'; rather, a court must make a more particularized, case-by-case assessment." *Kirtsaeng*, 579 U.S. at 202 (alteration in original) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)).

In considering whether to award attorney fees in a particular copyright case, courts consider four nonexclusive factors identified in *Fogerty v. Fantasy, Inc.*: "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (alteration in original) (quoting *Fogerty*, 510 U.S. at 534 n.19). "These factors may be 'used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner.'" *Balsley*, 691 F.3d at 773 (quoting *Fogerty*, 510 U.S. at 534 n.19). However, "not every factor must weigh in favor of the prevailing party and other factors may be considered as

8

well."[4] *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 894 (6th Cir. 2004).

Here, there is no dispute that Plaintiff is the prevailing party. (*See* ECF No. 20, PageID.166 ("IT IS HEREBY ORDERED that a Judgment and finding of liability is entered for copyright infringement against Defendant, in favor of Plaintiff, for all copyright claims asserted against Defendant in this action[.]").) Nor is there any dispute that Defendant's Rule 68 offer did not resolve the issue of attorney fees. (*See* ECF No. 18, PageID.161.) As such, the Court considers each of the *Fogerty* factors in turn.

### ii.   *Objective Reasonableness & Frivolousness*

Because objective reasonableness and frivolousness overlap, courts in this Circuit often analyze these factors together. *See, e.g.*, *Bliss Collection, LLC v. Latham Cos., LLC*, No. 5:20-CV-217-CHB, 2022 WL 1154600, at *5 (E.D. Ky. Apr. 19, 2022); *Dice Corp. v. Bold Techs. Ltd.*,

---

[4] Defendant asserts "[t]hese factors have been further defined by this Court as: (1) whether a party acted with an improper motivation (i.e. 'predatory, larcenous, or avaricious'); (2) the need to further compensate the plaintiff; and (3) whether an award of fees would deter the defendant from future copyright violations." (ECF No. 24, PageID.260 (citing *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 529 F. Supp. 2d 800 (E.D. Mich. 2007).) The Court declines to adopt this framing and will instead focus on the *Fogerty* factors as laid out by the Supreme Court and the Sixth Circuit.

No. 11-CV-13578, 2014 WL 2763618, at *18 (E.D. Mich. June 18, 2014); *Jones v. Blige*, 558 F.3d 485, 494 (6th Cir. 2009). In *Kirtsaeng*, the Supreme Court clarified that district courts should generally give "significant weight" to the objective reasonableness of the losing party's litigating position. *See* 579 U.S. at 205–09. Nevertheless, the *Kirtsaeng* Court underscored that "objective reasonableness can be only an important factor in assessing fee applications—not the controlling one" and that "courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Id.* at 208–09; *see also id.* at 209 (expressly disclaiming "a presumption against granting fees" when the district court makes a finding of reasonableness).

Here, Defendant asserts that its actions were objectively reasonable as it "conceded liability under the Act and promptly provided opposing counsel with a very reasonable Offer of Judgment early in the case[,] . . . did not file a dispositive motion, or play delay games during discovery." (ECF No. 24, PageID.260.) However, the Court notes that several of Defendant's affirmative defenses to Plaintiff's claims of infringement—including fair use, 17 U.S.C. § 512(c), and laches—were potentially unreasonable and frivolous in light of the controlling law and the fact of

10

this case.[5] (*See* ECF No. 10, PageID.61–63.) But because there has been no dispositive motion practice in this case, the Court has not had the opportunity to evaluate Defendant's substantive legal positions. Accordingly, the Court finds that this factor does not weigh in favor of either party and it is not particularly instructive in light of the specific circumstances of this case.

### iii.   *Motivation*

The Court next considers Plaintiff's motivations in bringing this lawsuit. *See Kirtsaeng*, 579 U.S. at 202. Plaintiff explains that her "principal motivation in suing was to stop Defendant's display and sale of infringing product and to successfully enforce her copyrights." (ECF No. 22, PageID.184.) Defendant concedes that Plaintiff "has not acted unreasonably in seeking to protect her copyrights." (ECF No. 24, PageID.263.) Instead, Defendant suggests that Plaintiff's attorneys "have acted in a predatory manner." (*Id.*) As the conduct of counsel is

---

[5] For example, Defendant's statute of limitations defense appears to be frivolous. Under § 507(b), the statute of limitations for civil actions under the Copyright Act is "three years after the claim accrued." 17 U.S.C. § 507(b). However, the Subject Designs were registered with effective dates on or after March 2, 2019. (ECF No. 1, PageID.3, ¶ 10.) Even assuming Defendant's infringement began on the effective date, Plaintiff complaint was filed on February 3, 2022, well within the three-year statute of limitations. (*See id.*)

considered separately below, the Court finds that this factor weighs in favor of Plaintiff.

### iv.   Compensation & Deterrence

The Court next considers "the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng*, 579 U.S. at 202 (quoting *Fogerty*, 510 U.S. at 534 n.19). With respect to compensation, Defendant asserts that Plaintiff "has made money from this lawsuit—far more money than [Defendant] made from the sale of a few tee-shirts bearing her designs." (ECF No. 24, PageID.261.) Defendant also emphasizes that Plaintiff's counsel received $1,850 from the $5,000 settlement pursuant to a contingent fee agreement and that counsel "are the only ones who stand to further profit from an award of fees." (*Id.*; *see also* ECF No. 22, PageID.189 (discussing contingency fee agreement).)

The Court disagrees and concludes that further compensation is warranted in this case to further the goals of the Copyright Act. "No one can prosecute a copyright suit for $3,000," *Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608, 610 (7th Cir. 2002), let alone $1,850. As another district court in this Circuit explained: "Awarding attorneys' fees in this case ensures that plaintiffs whose work has been infringed, no matter

how small the value of the infringement, have access to the courts."
*Corbis Corp. v. Starr*, No. 3:07CV3741, 2010 U.S. Dist. LEXIS 143768, at
*11 (N.D. Ohio Sep. 3, 2010). Reasonable compensation for Plaintiff's
counsel in this case ensures that Plaintiff will be able to continue
protecting her work with assistance from counsel when parties, such as
Defendant, fail to timely respond to her DMCA takedown requests.

With respect to deterrence, Defendant asserts that "there is no need
to 'deter' [Defendant] from future infringing conduct" because it "has
added Plaintiff's designs to its software system" to prevent further
uploads and has now registered under the DMCA. (ECF No. 24,
PageID.261–262.) The Court disagrees. Defendant's conduct related to its
response to the Additional Designs is revealing. Plaintiff notified
Defendant of three infringing listings using the Additional Designs on
May 4, 2022. (ECF No. 24-1, PageID.288.) Despite being embroiled in
active litigation with Plaintiff, Defendant took no action and the listings
remained active as of June 6, 2022. (*See id.* at PageID.298–299.) Instead,
Defendant waited till June 10, 2022—37 days after Plaintiff provided
notice—to confirm that it had removed the infringing listings. (*Id.* at
PageID.307.) Defendant responds that "there was no sense of urgency to

remove these items because when Defendant checked for sales of these items, there were none." (ECF No. 30, PageID.389.) But that just means that Defendant could have prevented any sales of the infringing products from taking place and chose not to do so. Moreover, as Plaintiff points out, Defendant's DMCA registration was only effective August 18, 2022—the date Defendant filed its response brief. (*See* ECF No. 29, PageID.378.) An award of attorney fees in this case will ensure that Defendant remains compliant with its DMCA obligations and timely responds to reports of infringement *before* further damages are incurred. As such, the Court finds that the need for both compensation and deterrence weigh in favor of Plaintiff.

### v.    *Litigation Conduct*

The Court may also consider the conduct of the parties in the litigation in determining the appropriateness of a fee award. *See Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 809 (6th Cir. 2005) (affirming award of fees based in part of Plaintiff's litigation conduct).

Several disputes arose between counsel during this litigation. The first concerned whether Defendant could "extend" its Rule 68 offer of

judgment or if a new offer must be served. (*See* ECF No. 24-1, PageID.316, 319, 324.) Ms. Danchuk also questioned whether Defendant's initial Rule 68 offer, notice of deposition to Plaintiff, and first set of discovery requests were improperly served via email because Plaintiff's counsel had not expressly consented to electronic service under Federal Rule of Civil Procedure 5(b)(2)(E).[6] (*See id.* at PageID.316, 319–320, 324, 336.)

Counsel next sparred over sales information for the Additional Designs posted to Defendant's site. In her June 6, 2022 letter to Mr. Fatabhoy, Ms. Danchuk reiterated Mr. Lapin's demand for sales information related to the Additional Designs. (*See id.* at PageID.299.) On June 10, 2022, Mr. Fatabhoy responded: "My client . . . informs me that there were absolutely no sales made in connection with these drawings." (*Id.* at PageID.307.) However, in May 2022, Ms. Danchuk had instructed Plaintiff to have a friend purchase several products bearing the Additional Designs "to ensure that Defendant was accurately reporting sales." (ECF No. 22-1, PageID.203, ¶ 15.) Consistent with this

---

[6] This objection was first raised on June 14, 2022 (ECF No. 24-1, PageID.316) after Plaintiff's counsel had already responded to the original Rule 68 offer of judgment served via email on June 6, 2022. (*Id.* at PageID.299–301.)

instruction, "Plaintiff's friend Jessica Andrews ordered product on May 26, 2022." (ECF No. 29, PageID.376; *see also* ECF No. 24-1, PageID.311–314.) Defendant asserts that it later informed Plaintiff of these sales, although the date of such notice is not clear from the record.[7] (*See* ECF No. 30, PageID.387.)

Finally, on June 14, 2022, Plaintiff served Defendant with her initial disclosures. (*See* ECF No. 24-1, PageID.316; ECF No. 17-1, PageID.139.) In those disclosures, Plaintiff identified Mr. Fatabhoy as a potential witness "regarding receipt of Dmitry Lapin's email correspondence dated May 4, 2022 and May 12, 2022 providing notice of Defendant's infringement of White's artwork." (ECF No. 17-1, PageID.135.) Ms. Danchuk also requested Mr. Fatabhoy's availability for a deposition. (ECF No. 24-1, PageID.316.) Mr. Fatabhoy objected to the demand for his own deposition, refused to provide his availability, and detailed why such a deposition was unreasonable. (*See id.* at

---

[7] In its response, Defendant accuses Plaintiff of "manufacturing" damages by having a friend make purchase of the Additional Designs after Defendant failed to take them down in a timely manner. (*See* ECF No. 24, PageID.247–248 & n.3) But there is nothing untoward about Plaintiff making such purchases in light of Defendant's failure to timely provide information regarding sales of the Additional Designs. *Cf. Coach, Inc. v. D & N Clothing, Inc.*, No. 10-12813, 2011 WL 2682969, at *1 (E.D. Mich. July 11, 2011) (describing test purchases by the plaintiff).

PageID.320–321.) Ms. Danchuk replied on June 15, 2022, asserting that Mr. Fatabhoy's deposition was proper and "indispensable" to whether Defendant acted willfully. (*See id.* at PageID.324–325.) There is nothing in the record to indicate that Plaintiff formally noticed the deposition of Mr. Fatabhoy. Nevertheless, on June 21, 2022, Defendant preemptively filed a "motion for leave to file a motion for a protective order," seeking to prevent Plaintiff from deposing Mr. Fatabhoy and requesting sanctions under Federal Rule of Civil Procedure 37. (ECF Nos. 17, 17-1.) That motion was inconsistent with the undersigned's Practice Guidelines, which require parties to contact the Case Manager to schedule a conference *prior to* filing a discovery motion. *Judge Judith E. Levy*, United States District Court for the Eastern District of Michigan, https://www.mied.uscourts.gov/index.cfm?pageFunction=cha mbers&judgeid=44 (last visited Apr. 6, 2023).

The parties devote much of their briefing for this motion on the minutia of these disputes and offering theories about potential improper motives by the opposing party and opposing counsel. (*See* ECF Nos. 22, 24, 29, 30.) However, the Court need not weigh in on all of these to resolve this motion. It certainly appears that counsel for both parties have failed

to act with civility towards one another as required by the District's Civility Principles. While some of Ms. Danchuk's tactics (such as requiring service by mail and seeking to depose Mr. Fatabhoy) were unnecessary, they do not rise to a level that would warrant a denial of all attorney fees in this case. *See Bridgeport Music, Inc. v. Sony Music Ent., Inc.*, 114 F. App'x 645, 653 (6th Cir. 2004) (finding that "it would be an abuse of discretion to conclude that the plaintiffs' litigation tactics weighed in favor of an award of fees simply because of the voluminous nature of the pleadings or the annoying conduct of counsel"). Instead, the Court will consider whether conduct by Ms. Danchuk warrants a reduction in the amount of fees awarded. *Cf. Miller v. Hurst*, No. 3:17-CV-00791, 2021 WL 859552, at *6 (M.D. Tenn. Mar. 8, 2021) (considering "the plaintiff's ability to pay" in the context of "the determination of the amount of the fee to be awarded, rather than in determining whether a fee award is warranted at all"), *aff'd*, No. 21-5506, 2022 U.S. App. LEXIS 2494 (6th Cir. Jan. 26, 2022).

Accordingly, the Court finds that the *Fogerty* factors weigh in favor of an award of attorney fees to Plaintiff as the prevailing party and that an award under § 505 is consistent with the goals of the Copyright Act.

### B.   Reasonableness of Plaintiff's Requested Attorney Fees

While attorney fees are warranted under § 505, the Court concludes that Plaintiff's request for an award of $33,125.20 is not reasonable for the reasons set forth below.

### i.   *Legal Standard*

An award of attorney fees under § 505 of the Copyright Act must also be reasonable. 17 U.S.C. § 505. To determine whether the requested attorney fees are reasonable, the district court must begin by calculating the "lodestar" amount, "which is the proven number of hours reasonably expended on the case by an attorney, multiplied by [their] court-ascertained reasonable hourly rate." *Hubbell v. FedEx SmartPost*, Inc., 933 F.3d 558, 575 (6th Cir. 2019) (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013)). Courts in this Circuit regularly apply the lodestar approach to requests for attorney fees under § 505. *See, e.g.*, *Diamond Time*, 371 F.3d at 896–97; *Studio A Ent., Inc. v. Action DVD*, 658 F. Supp. 2d 851, 856–58 (N.D. Ohio 2009). In analyzing the requested attorney fee award, "a district court is permitted to 'rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee

19

requests.'" *Waldo*, 726 F.3d at 822 (quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011)).

### ii.    Reasonable Hours

The Court first considers whether the hours expended by Plaintiff's counsel are reasonable. "The district court . . . should exclude from [its] initial fee calculation hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "The party applying for an award of fees should exercise billing judgment with respect to hours worked." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 552 (6th Cir. 2008) (internal quotations omitted) (quoting *Hensley*, 461 U.S. at 437). Additionally, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

"[T]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 553 (quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984)). "Where the

documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. "Courts in this circuit have reduced attorney fees on the basis of insufficient billing descriptions . . . where billing records 'lumped' together time entries under one total so that it was 'impossible to determine the amount of time spent on each task.'" *Imwalle*, 515 F.3d at 553 (citations omitted); *see also Hubbell*, 933 F.3d at 575–76 (affirming the district court's 35% reduction of billed hours where "many of the time entries were vague, redundant, block billed, or apparently billed in quarter-hour increments"); *Sevy v. Barach*, No. 17-13789, 2022 WL 4234951, at *8 (E.D. Mich. Sept. 14, 2022) (reducing hours by 35% where counsel "did not keep contemporaneous records," "used block billing," and submitted entries that "were excessive and possibly inaccurate").

Plaintiff's counsel submitted billing records which reflect 81.38 hours by Ms. Danchuk, 17.70 hours for Mr. Lapin, and 8.00 hours for Mr. Aronowitz. (*See* ECF No. 22-1, PageID.208–212; ECF No. 22-2, PageID.226–229; ECF No. 22-3, PageID.234–241.) Defendant objects to these hours, especially the amount of time Ms. Danchuk spent on the

matter after the acceptance of the Rule 68 offer of judgment.[8] (*See* ECF No. 24, PageID.266, 268.) The Court reviews each attorney's hours in turn.

### a. Dmitry Lapin

The billing records indicate that Mr. Lapin spent 17.70 hours on this case before his departure from Danchuk Law on May 12, 2022. (*See* ECF No. 22-2, PageID.226–229.) His work included drafting a cease-and-desist letter; obtaining local counsel; seeking admission in this District; preparing the complaint with exhibits; attempting service, conducting legal research, and corresponding with opposing counsel. (*See id.*) While some of these entries could be considered block billing, they are detailed, generally concern related tasks, and do not prevent the Court from

---

[8] Defendant also objects, among other things, to counsel's "failure to delegate administrative tasks" because "an administrative assistant . . . should have handled certain tasks related to her pro hac appearance in this case." (ECF No. 24, PageID.268.) While Defendant cites no authority for this objection, this Court has previously excluded hours for purely administrative, non-legal tasks (such as filing, retrieving documents, scheduling meetings, or creating binders). *See Mendez v. FedEx Express*, No. 15-CV-12301, 2017 WL 168168, at *4 (E.D. Mich. Jan. 17, 2017) (Levy, J.) (collecting cases). However, the Court will not deduct from counsel's hours on this basis because the time spent on purely administrative tasks for admission (such as requesting certificates of good standing) was de minimis. (*See, e.g.*, ECF No. 22-2, PageID.227 (January 25, 2022 0.40 hours for "Review admission requirements of [E]astern [D]istrict of Michigan; prepare and file request for certificate of standing")).

making a reasoned assessment of Mr. Lapin's work. (*See id.*) Overall, Mr. Lapin's work was efficient and proportional to the complexity of the case. As such, the Court finds that Mr. Lapin reasonably expended 17.70 hours in this litigation.

### b. Edmund Aronowitz

The records show that Mr. Aronowitz spent 6.50 hours on this case as local counsel prior to the Court's entry of judgment and 1.50 hours reviewing Plaintiff's fee motion. (*See* ECF No. 21-3, PageID.234–241.) His work included advising co-counsel on admission; reviewing the complaint; corresponding with co-counsel and opposing counsel regarding discovery, Defendant's Rule 68 offer, and attorney fees; and conducting limited legal research. (*See id.*) Mr. Aronowitz also engaged in some block billing, but the entries are sufficiently detailed to facilitate the Court's review. (*See id.*) Mr. Aronowitz's work was efficient and proportional to his limited role in the case. Thus, the Court finds that Mr. Aronowitz reasonably expended 8.00 hours in this litigation.

### c. *Emily Danchuk*

<u>Pre-Judgment Fees</u>

Ms. Danchuk began working on this case on May 23, 2022 and logged 31.34 hours prior to the Court's entry of the judgment on July 7, 2022. (*See* ECF No. 22-1, PageID.208–210.) Her work involved reviewing the status of the case; drafting a motion for substitution of counsel; revising the proposed discovery plan and protective order; communicating with Plaintiff, local counsel, and opposing counsel; and negotiating with Defendant regarding settlement. (*Id.*) After carefully reviewing Ms. Danchuk's time entries and the record in this case, the Court finds that a 35% reduction of Ms. Danchuk's pre-judgment hours is appropriate.

First, a reduction in Ms. Danchuk's hours is necessary to address block billing. For example, Ms. Danchuk's May 25, 2022 entry for 3.52 hours reads: "Prepare Motion to Substitute Counsel; Review draft Joint Discovery Plan." (*Id.* at PageID.208.) And her May 26, 2022 entry for 4.7 hours reads:

> Review proposed Joint Discovery Plan/ESP Protocol/Protective Order; Review Rule 68 offer letter from Defendants; Telephone call with opposing counsel re: same; Review Judge Levy's sample protective order; Email to

> opposing counsel re: same; Finalize and file Motion for
> Substitution of Counsel; Review file and online search re:
> settlement; Telephone call with client re: settlement offer

(*Id.*) Based on this block billing, it is impossible to delineate the amount

of time Ms. Danchuk spent on drafting the motion for substitution of

counsel, reviewing the file, or reviewing the Joint Discovery Plan. As a

result, the Court cannot assess, among other things, whether the time

Ms. Danchuk took in getting up to speed after Mr. Lapin's departure was

reasonable.

A reduction is also appropriate to address potential over-billing by

Ms. Danchuk. Defendant points to the 5.55 hours Ms. Danchuk spent on

a five-page letter to opposing counsel as exemplary of Ms. Danchuk's

"unreasonable time expenditure[s]." (*See* ECF No. 24, PageID.268; *see*

*also* ECF No. 22-1, PageID.209.) The Court agrees. Over the course of her

first eight days working on this matter, Ms. Danchuk billed 17.35 hours,

nearly the same amount of time Mr. Lapin expended on the entire

litigation prior to his departure. (*See* ECF No. 22-1, PageID.208–209,

ECF No. 22-2, PageID.226–229.) This surprising accumulation of

expenditures immediately after receiving Defendant's Rule 68 offer on

May 25, 2022 (*see* ECF No. 24-1, PageID.276) suggests that Ms. Danchuk

was at a minimum seeking to bolster her settlement position on attorney fees in her June 6, 2022 letter to opposing counsel. (*See id.* at PageID.301 (noting attorney fees of "approximately $8,000").)[9]

Finally, a reduction to Ms. Danchuk's hours is also necessary because portions of her work relate to conflicts of her own making. For example, despite corresponding with opposing counsel regarding Defendant's Rule 68 offer via email on June 6, 2022, Ms. Danchuk began insisting on service exclusively via mail on June 14, 2022. (*See id.* at PageID.298–302, 316). Additionally, Ms. Danchuk named Mr. Fatabhoy as a witness in Plaintiff's initial disclosures without any valid basis. (*See id.* at PageID.316; ECF No. 17-1, PageID.139.) These actions led to time-consuming disputes with opposing counsel via email. (*See* ECF No. 24-1, PageID.319–321, 324–325.) The Court will not award attorney fees for this exchange. Because Ms. Danchuk's entries are block billed, the Court cannot exclude this time without striking all of Ms. Danchuk's 10.98 hours from the relative period (June 13, 2022 to June 15, 2022). (*See* ECF

---

[9] As of June 6, 2022, Plaintiff's attorney fees for Mr. Lapin and Mr. Aronowitz totaled $5,565.50. (*See* ECF No. 22-2, PageID.226–229; ECF No. 22-3, PageID.239–241.) By contrast, Ms. Danchuk's 17.35 hours as of this date equate to $5,465.25 in fees.

No. 22-1, PageID.209.) As such, a percentage reduction is appropriate to exclude this time from Ms. Danchuk's reasonable pre-judgment hours.

Accordingly, the Court applies a 35% reduction to Ms. Danchuk's 31.34 pre-judgment hours. Thus, the Court finds that Ms. Danchuk reasonably expended 20.37 hours prior to the entry of judgment.

<u>Post-Judgment Fees</u>

Following entry of the judgment, Ms. Danchuk recorded 50.04 hours related to Plaintiff's motion for attorney fees.[10] (*Id.* at PageID.210–212.) Defendant accuses Ms. Danchuk of "intentionally inflating [her] expended hours by over-billing" and requests these post-judgment hours be excluded.[11] (*See* ECF No. 24, PageID.266.) The Court agrees that Ms.

---

[10] In her reply, Plaintiff asserts that Ms. Danchuk "spent a total of 45.54 hours on [Plaintiff's] motion for attorney fees." (ECF No. 29, PageID.380.) Plaintiff does not explain the basis for the calculation. It appears that Plaintiff failed to include Ms. Danchuk's entries for July 19–20, 2022 in calculating this total. (*See* ECF No. 22-1, PageID.210–212 (1.74 + 2.76 +45.54 = 50.04).)

[11] In its response, Defendant assumes that all entries after June 21, 2022— when Plaintiff filed its acceptance of Defendant's Rule 68 offer—constitute post-judgment hours. (*See* ECF No. 24, PageID.266.) The Court disagrees and considers all time entries on or before July 7, 2022—when the Court entered the judgment—as pre-judgment fees. (*See* ECF No. 20.) Regardless, between June 22, 2022 and July 7, 2022, Ms. Danchuk logged less than 1 hour on this case.

Danchuk's hours on Plaintiff's attorney fees motion are excessive and will reduce the number of post-judgment hours accordingly.

"There is no bright-line rule capping the number of hours that can be spent on 'fees for fee awards.'" *Mendez*, 2017 WL 168168, at *4 (citing *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 725 (6th Cir. 2016)). Instead, the district court must determine the number of reasonable hours spent seeking a fee award. *See Husted*, 831 F.3d at 725. However, courts in this Circuit regularly exclude excessive hours spent on a motion for attorney fees. *See, e.g.*, *Lorenzo v. Barr*, 806 F. App'x 431, 438 (6th Cir. 2020) (reducing hours where attorney's 22.7 hours for fee motion represented one third of the total hours); *Mendez*, 2017 WL 168168, at *3 (reducing hours where attorney's 16.2 hours for a fee motion represented 12.5% of the total hours).

Plaintiff argues that because this case settled without "the opportunity to present the specific facts of this case to this Court," Ms. Danchuk's hours were necessary for Plaintiff "to carefully and clearly set forth the facts in this case and then make its case for attorneys' fees" and likens this motion to one for summary judgment. (ECF No. 29, PageID.380–381.) The Court does not agree. Ms. Danchuk's 50.04 hours

28

for this motion are excessive, especially considering the early settlement in this case without any substantive motion practice and minimal discovery. Further, her 50.04 hours on the fee motion represents 46.7% of the hours claimed by Plaintiff and 61.5% of Ms. Danchuk's reported hours on this litigation. As such, the Court finds that Ms. Danchuk's post-judgment hours are unreasonable and concludes that only 15.00 hours were reasonably expended by Ms. Danchuk on the motion.

Accordingly, Ms. Danchuk reasonably expended 35.37 hours in total on this litigation.

### iii.  Reasonable Hourly Rates

The Court next considers whether Plaintiff's requested hourly billing rates are reasonable. "[A] district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Waldo*, 726 F.3d at 821 (quoting *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994)). The Sixth Circuit "uses the 'community market rule' to calculate a reasonable billing rate. Under that rule, the billing rate 'should not exceed what is necessary to encourage competent lawyers within the relevant community to undertake legal representation.'" *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020) (quoting

*Hadix v. Johnson*, 65 F.3d 532, 535–36 (6th Cir. 1995)). "The accepted benchmark for determining reasonable hourly rates in this district is the State Bar of Michigan's most recent Economics of Law Practice Survey." *Sevy*, 2022 WL 4234951, at *3 (quoting *Plastic Omnium Auto Inergy Indus. SA de CV v. MCC Dev., Inc.*, No. 21-CV-11141, 2022 WL 992979, at *1 (E.D. Mich. Mar. 31, 2022)); *see also Waldo*, 726 F.3d at 822 (approving the district court's use of the 2010 survey).

Here, Plaintiff states that Ms. Danchuk's standard hourly rate is $315,[12] Mr. Lapin's standard hourly rate was $265, and Mr. Aronowitz's hourly rate as local counsel for this litigation was $350. (ECF No. 22, PageID.193, 194, 196.) Defendant does not dispute that these rates are reasonable. (ECF No. 24, PageID.265.) The Court agrees. These hourly rates all fall within the ranges from the State Bar of Michigan's 2020 Economics of Law Practice Survey cited by Plaintiff. (*See* ECF No. 22, PageID.196–197.) *See also* State Bar of Michigan, *Economics of Law*

---

[12] In her declaration, Ms. Danchuk asserts that "[a]n award by this Court of all of Plaintiff's requested attorney[] fees will result in a rate of roughly $110/hour for my services rendered in connection with this matter." (ECF No. 22-1, PageID.206.) However, Ms. Danchuk does not explain how she reached this "$110/hour" figure, and the Court is unable to identify how this purported hourly rate corresponds to the $33,125.20 in attorney fees Plaintiff is requesting.

*Practice   in   Michigan:   The   2020   Desktop   Reference   of the Economics of Law Practice in Michigan* 8, 10 (2020), https://www.mi chbar.org/file/pmrc/articles/0000156.pdf [hereinafter "*2020 Economics of Law Practice Survey*"]. Additionally, the Court notes that for attorneys practicing in Ann Arbor, Michigan—where the undersigned sits—the median hourly rate is $300 and the 75th percentile hourly rate is $400. *2020 Economics of Law Practice Survey* at 9. As such, the Court finds that Ms. Danchuk's hourly rate of $315, Mr. Lapin's hourly rate of $265, and Mr. Aronowitz's hourly rate of $350 are reasonable.

In light of the Court's findings regarding reasonable hours and reasonable hourly rates, the Court calculates the lodestar as follows:

| Attorney | Hours | Rates | Sub-Total |
|---|---|---|---|
| Danchuk | 35.37 | $315 | $11,141.55 |
| Lapin | 17.70 | $265 | $4,690.50 |
| Aronowitz | 8.00 | $350 | $2,800.00 |
| | | **TOTAL** | **$18,632.05** |

As such, the lodestar is $18,632.05.

### iv.    *Adjustment of the Lodestar Amount*

Once the district court has calculated the lodestar, it must then "consider adjusting the fee based on a number of factors, the most important of which 'is the degree of success obtained.'" *Hubbell*, 933 F.3d

31

at 575 (quoting *Waldo*, 726 F.3d at 822). "The district court also may consider other factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 ([5th Cir.] 1974), though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."[13] *Hensley*, 461 U.S. at 434 n.9. "Generally, a 'strong presumption' favors the prevailing lawyer's entitlement to his lodestar fee." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). "[A] reduction in attorney fees [awarded to a prevailing plaintiff] is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Waldo*, 726 F.3d at 822 (second alteration in original) (quoting *Isabel v City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005)).

Neither party has explained why this is an exceptional case that warrants an upward or downward departure from the lodestar amount.

---

[13] The twelve *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3 (citing *Johnson*, 488 F.2d, at 717–19).

However, the Court finds that an adjustment to the lodestar is not warranted in this case. Significantly, Plaintiff prevailed on all of her claims of infringement and received a $5,000 award, which is within the range of potential statutory damages. *See* 17 U.S.C. § 504(c)(1) (authorizing statutory damages for infringement "not less than $750 or more than $30,000" for "all infringements involved in the action, with respect to any one work"). And to the extent Defendant argues that Plaintiff's contingency fee agreement requires a reduction, the Sixth Circuit has made clear that "a contingency fee agreement may not be 'the basis for a downward adjustment from an otherwise reasonable rate.'" *Murphy v. Vaive Wood Prod. Co.*, 802 F. App'x 930, 937 (6th Cir. 2020) (quoting *Hamlin v. Charter Twp.of Flint*, 165 F.3d 426, 438 (6th Cir. 1999)). As such, the Court concludes that the lodestar represents a reasonable award of attorney fees in this case.

Accordingly, the Court grants in part and denies in part Plaintiff's request for attorney fees. Plaintiff's counsel is awarded attorney fees in the amount of $18,632.05.

## III.   Costs

Plaintiff's motion also seeks "costs of $1,339.65 in this action pursuant to Fed. R. Civ. P. 54(d)(1)." (ECF No. 22, PageID.198.) Defendant did not address this request in its response or sur-reply. (*See* ECF Nos. 24, 30.) For the reasons set forth below, Plaintiff's request for costs is denied.

Rule 54(d)(1) states:

Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. . . . The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

Eastern District of Michigan Local Rule 54.1 further provides that "[a] party seeking costs must file a bill of costs no later than 28 days after the entry of judgment. The clerk will tax costs under Fed. R. Civ. P. 54(d)(1) as provided in the Bill of Costs Handbook available from the clerk's office and the Court's web site." Per the handbook, a bill of costs must be filed electronically, use the required form, and include documentation such as "receipts, orders and stipulations of the parties." E.D. Mich. Bill of Costs Handbook § I.C (rev. Nov. 2013), http://www.mied.uscourts.gov/PDFFIle s/BillofCostsHandbook.pdf.

34

Both Rule 54(d)(1) and Local Rule 54.1 specify that requests for costs must first be presented to the Clerk. Here, Plaintiff's counsel failed to file the required bill of costs with the Clerk within 28 days of judgment and instead filed only this motion. Because the motion fails to comply with Rule 54(d)(1) and Local Rule 54.1, Plaintiff's request for costs under Rule 54(d)(1) is denied.

## IV.   Conclusion

Accordingly, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for attorney fees.

The Court GRANTS IN PART AND DENIES IN PART Plaintiff's request for attorney fees. Plaintiff's counsel is awarded attorney fees in the amount of $18,632.05.

The Court DENIES Plaintiff's request for costs.

IT IS SO ORDERED.

Dated: April 6, 2023                  s/Judith E. Levy
Ann Arbor, Michigan              JUDITH E. LEVY
                                 United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 6, 2023.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager